# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 03-1903(E)

R. Edward Bates, Petitioner,

v.

R. James Nicholson,
Secretary of Veterans Affairs, Respondent.

On Petitioner's Application for Attorney Fees and Expenses

(Decided    July 18, 2006    )

*Kenneth M. Carpenter*, of Topeka, Kansas, was on the pleading for the petitioner.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel*; Mary Ann Flynn*, Principal Deputy Assistant General Counsel; and *David L. Quinn*, all of Washington, D.C., were on the pleading for the respondent.

Before HAGEL, MOORMAN, and SCHOELEN, *Judges*.

SCHOELEN, *Judge*:  This case is before the Court on the petitioner's September 21, 2005, application, filed, through counsel, for reasonable attorney fees and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (EAJA), and his January 9, 2006, amended application.  For the reasons set forth below, the Court will deny the original and amended applications.

## I.  Background

Petitioner R. Edward Bates is an attorney at law admitted to practice before this Court.  Prior to July 2003, he was accredited to represent claimants before the Department of Veterans Affairs (VA) pursuant to 38 U.S.C. §§ 5901 and 5904(a).  In December 2000, a VA regional counsel notified Mr. Bates of the Secretary's intent to cancel his accreditation to represent claimants before VA.  After a hearing on the matter, the petitioner was informed by a July 28, 2003, letter from the VA General Counsel (GC) that, pursuant to section 5904(a) and 38 C.F.R. § 14.633 (2002), the Secretary had cancelled his accreditation.  On August 6, 2003, the petitioner, through counsel, filed with a VA

regional office (RO) a Notice of Disagreement (NOD) as to the Secretary's decision and requested a stay of the cancellation pending administrative and judicial appellate review. The RO did not respond to the petitioner's request, but instead referred the matter to the Office of the GC. On October 20, 2003, the petitioner, through counsel, filed in this Court a petition for extraordinary relief in the nature of a writ of mandamus requesting that the Court order the Secretary or his delegates to provide a Statement of the Case (SOC) in connection with the petitioner's NOD. On October 28, 2003, the petitioner filed a supplemental verified petition confirming that the Secretary had refused to issue an SOC.

On October 31, 2003, the Court ordered the Secretary to file an answer to the petition. The Secretary filed his answer on December 1, 2003. The Secretary asserted that the Court's authority under the All Writs Act, 28 U.S.C. § 1651(a), did not extend to the matter raised in the petition because such a matter could never result in a decision by the Board of Veterans' Appeals (Board). Accordingly, the Secretary urged the Court to dismiss the petition for lack of jurisdiction.

In an order dated February 19, 2004, the Court dismissed the petition for lack of jurisdiction. *Bates v. Nicholson*, 17 Vet.App. 443 (2004) (per curiam order). The Court concluded that section 5904(b) was not a law that "affects the provision of benefits by the Secretary to veterans," 38 U.S.C. § 511(a), and that, therefore, the issue of the petitioner's challenge to the termination of his accreditation was not a matter justiciable by the Board under 38 U.S.C. § 7104(a). Because the power to issue a writ extends only to the Court's potential jurisdiction, the Court concluded that it was without authority to issue the writ of mandamus. *Bates*, 17 Vet.App. at 445-47. The petitioner subsequently appealed the matter to the United States Court of Appeals for the Federal Circuit (Federal Circuit).

On February 28, 2005, the Federal Circuit concluded that this Court had erred in holding that section 5904(b) was not a "law that affects the provision of benefits to veterans" under section 511(a), and reversed our February 2004 decision in *Bates*. *Bates v. Nicholson*, 398 F.3d 1362 (Fed. Cir. 2005). In reaching that conclusion, the Federal Circuit reasoned that, although subsection 5904(b) is not itself "a law that affects the provision of benefits," this Court erred when it construed the term "law" in section 511(a) to indicate a particular statutory subsection (such as section 5904(b)). The Federal Circuit held that, for the purposes of section 511(a), "the relevant 'law' is the

public law that originally enacted section 5904, the Veterans Act of 1936, ch. 867, 49 Stat. 2031." *Bates,* 398 F.3d at 1362. Under that definition, a "law" would encompass every statutory section and subsection enacted by the public law (including section 5904(b)). *Id.* at 1355. Therefore, both the Board and this Court have jurisdiction to review a VA accreditation-cancellation decision pursuant to section 5904(b). *Id.*

In light of that determination, the Federal Circuit remanded the matter with instructions to issue the requested writ of mandamus. *Bates*, 398 F.3d at 1365-66. In accordance with the mandate of the Federal Circuit, on June 17, 2005, this Court granted the petitioner's petition for a writ of mandamus and ordered the Secretary to issue an SOC. *Bates v. Nicholson*, 19 Vet.App. 197 (2005) (per curiam order). The Secretary provided the petitioner with an SOC on July 6, 2005. On September 21, 2005, the petitioner filed, through counsel, an EAJA application for attorney fees incurred in connection with the mandamus action. In that application (as amended on January 9, 2006), he requests $8,778.58 in attorney fees and $1,738.80 in costs and expenses, for a total of $10,517.38.

## II. Contentions of the Parties

The petitioner asserts that he is entitled to an award of attorney fees under the EAJA because he is a prevailing party and because the Secretary's position at the administrative stage was not substantially justified. Application (Appl.) at 1. He contends that, contrary to the Secretary's assertion, the issue in this case was not one of first impression. Appl. Response (Resp.) at 2-3. He asserts that the Federal Circuit's decisions in *Cox v. West*, 149 F.3d 1360 (Fed. Cir. 1998), *Hanlin v. United States*, 214 F.3d 1319 (Fed. Cir. 2000), and *Scates v. Principi*, 282 F.3d 1362 (Fed. Cir. 2002), are controlling precedents that address the question of whether attorney disaccreditation under section 5904(b) is subject to administrative appellate review pursuant to 38 U.S.C. § 7105. *Id.* at 3-4. He argues that, in light of those precedents, the Secretary was not substantially justified in believing that the statutory and regulatory scheme did not enable the claimants' representatives to appeal to the Board matters relating to accreditation. *Id.* at 4. He further points out that the Secretary's substantial justification argument is "the same argument rejected by the Federal Circuit" in its reversal of *Bates*. *Id.* at 3.

3

The Secretary contends that the Court should deny the petitioner's EAJA application. He asserts that (1) VA's position was substantially justified at both the administrative and litigation stages of the proceedings, and (2) in this case, special circumstances exist that would make an award unjust. Secretary's (Sec'y) Resp. at 5, 13. The Secretary contends that the Court should find VA's position to be substantially justified because "[t]he issue involved in this case was one of first impression," and points to the fact that "there is nothing in section 5904(b) which, on its face, would suggest that the Board would have jurisdiction over the accreditation of representatives." *Id*. at 8, 11. As to "special circumstances," the Secretary contends that the underlying facts of this case show that the petitioner "repeatedly violated federal law," and that it would be unjust to order the Government to "pay the legal costs associated with the defense of his misconduct." *Id*. at 13, 15. The Secretary does not contest whether the petitioner was a "prevailing party," but notes that controlling legal precedent "requires a party to have achieved some success on the merits (*Akers v. Nicholson*, 409 F.3d 1356 (Fed. Cir. 2005)) before achieving such status," and that the Court's authority under the All Writs Act "extends only to the 'administrative process,' not to the 'merits' of a claim." Sec'y Resp. at 2 n. 1 (citing to *Heath v. West*, 11 Vet.App. 400, 402-03 (1998)).

### III. Analysis

This Court has jurisdiction to award reasonable attorney fees and expenses pursuant to 28 U.S.C. § 2412(d)(2)(F). Here, the petitioner's September 21, 2005, EAJA application was filed within the 30-day EAJA application period set forth in 28 U.S.C. § 2412(d)(1)(B). It also satisfies the requisite EAJA "application-content specifications," because it contains the following: (1) An allegation that the petitioner is a prevailing party; (2) a showing that he is a party eligible for an EAJA award because his net worth does not exceed $2,000,000; (3) an allegation that the position of the Secretary was not substantially justified; and (4) an itemized fee statement. *See* 28 U.S.C. § 2412(d)(1)(A), (1)(B), and (2)(B); *Scarborough v. Principi*, 541 U.S. 401 (2004); *Scarborough v. Nicholson*, 19 Vet.App. 253, 257 (2005).

#### A. Prevailing-Party Status

The first question that must be resolved is whether the petitioner is a "prevailing party." *Comm'r v. Jean*, 496 U.S. 154, 160 (1990) (holding that, "[i]n EAJA cases, the Court first must determine if the applicant is a 'prevailing party' by evaluating the degree of success obtained. If the

Government then asserts an exception for substantial justification or for circumstances that render an award unjust, the court must make a second finding regarding these additional threshold conditions."). Although the Secretary does not contest the prevailing-party question, the Court will address it here because we have never addressed whether the grant of a petition for extraordinary relief in the nature of a writ of mandamus renders a petitioner a "prevailing party" for the purposes of the EAJA. For the reasons stated below, the Court holds that the petitioner is a prevailing party.

The Supreme Court set forth the requirements necessary for a plaintiff to be deemed a "prevailing party" for the purpose of attorney fee awards under the Fair Housing and Amendments Act of 1988 and the Americans with Disabilities Act in *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res*., 532 U.S. 598, 610 (2001). *See also Brickwood Contractors, Inc. v. United States*, 288 F.3d 1371 (Fed. Cir. 2002) (applying *Buckhannon* to EAJA applications). According to *Buckhannon*, a plaintiff must meet two criteria to qualify as a prevailing party. First, the plaintiff must be able to point to a resolution of the dispute that causes a "material alteration in the legal relationship of the parties." *Buckhannon*, 532 U.S. at 604 (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989)). Second, that change in legal status must be "judicially sanctioned." *Id*. In other words, prevailing-party status requires that a party "must have received a judicial imprimatur tantamount to a judgment in favor of that party on the merits of the original claim." *Akers*, 409 F.3d at 1359.

In applying *Buckhannon*, this Court has determined that to prevail, a party must have achieved "the ultimate receipt of a benefit that was sought in bringing the litigation, i.e., the award of a benefit, or, at a minimum, a court remand predicated upon administrative error." *Sumner v. Principi,* 15 Vet.App. 256, 264 (2001) (en banc), *aff'd sub nom*. *Vaughn v. Principi*, 336 F.3d 1351 (2003) (appeal consolidated with appeal in *Sumner v. Principi*). The Court reached that conclusion because both of those alternatives "entail resolutions that materially alter the legal relationship of the parties," which the Court recognized as "the touchstone of the prevailing party inquiry." *Id*. (quoting *Tex. State Teachers Ass'n*, *supra*).

However, it is also well established that certain interlocutory rulings often fail to provide the "threshold level of relief " required to establish prevailing-party status. As examples of relief that fall below that threshold, the Supreme Court in *Buckhannon* cited to the relief at issue in *Hanrahan*

5

*v. Hampton*, 446 U.S. 754 (1980), and *Hewitt v. Helms*, 482 U.S. 755 (1987). In *Hanrahan*, an appellate court reversed the district court's directed verdict against the respondents and remanded the case for a new trial. In subsequent litigation for attorney fees, the Supreme Court rejected the respondents' assertion of prevailing-party status, noting:

> The respondents have of course not prevailed on the merits of any of their claims. The Court of Appeals held only that the respondents were entitled to a trial of their cause. . . . As is true of other procedural or evidentiary rulings, these determinations may affect the disposition on the merits, but were themselves not matters on which a party could "prevail" for purposes of shifting his counsel fees to the opposing party under § 1988.

446 U.S. at 758-59 (footnote omitted). Similarly, in *Hewitt*, the Supreme Court held that a prisoner who had filed suit for damages and injunctive relief (but received neither) was not a prevailing party, in spite of the appellate court's ruling that the prisoner's constitutional rights had been violated. In reaching this result, the Court held that a party must "receive at least some relief on the merits of his claim before he can be said to prevail. . . . The most that [the claimant] obtained was an interlocutory ruling that his complaint should not have been dismissed for failure to state a constitutional claim. That is not the stuff of which legal victories are made." *Hewitt*, 482 U.S. at 760.

What primarily distinguishes this case from *Hanrahan* and *Hewitt* is that in this case, the Court's issuance of the writ caused an undebatable change in the "legal relationship of the parties" by both establishing the petitioner's right to appeal his case through VA's administrative review process and finding error in the Secretary's interpretation of law. Although the plaintiffs in *Hanrahan* were awarded the right to a "trial of their cause," 446 U.S. at 758-59, that award did not change the legal relationship of the parties; at most, that award changed the legal relationship between the plaintiffs and the district court. Unlike the claimant in *Hewitt*, the petitioner here received more than a favorable statement of law. Here, the petitioner's securing of the previously unrecognized right to VA administrative review did indeed change the legal relationship between the parties because it is the Secretary who is now compelled, by the Court's "judicially sanctioned" writ of mandamus, to provide that review.

What further distinguishes this case from *Hanrahan* and *Hewitt* is that in those cases, the plaintiffs sought substantive relief, and, receiving only procedural benefits, sought EAJA fees for

6

those. In this case, Mr. Bates' only purpose before the Court was to seek a writ compelling the Secretary to issue an SOC, thereby allowing his appeal to proceed to the Board. Although the mandamus relief granted is procedural and, in some sense, interlocutory, it is also precisely the relief that he requested. *See Me. Sch. Admin. Dist. No. 35 v. Mr. R.*, 321 F.3d 9, 15-16 (1st Cir. 2003) (holding that "a defendant who prevails on the only claim that justifies the presence of the case in a federal court" is a prevailing party); *Watson v. County of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002) (holding that a plaintiff who succeeded in winning a preliminary injunction preventing the use of an arrest report at an administrative hearing was a prevailing party because the plaintiff "obtained significant, court-ordered relief that accomplished one of the main purposes of his lawsuit"). Further, that relief was granted on the basis he sought, not because of the fortuitous passage of controlling legislation or for the consideration of new evidence. *Cf. Akers*, 409 F.3d at 1359 (concluding that remands based solely on the passage of a statute or intervening caselaw did not confer prevailing-party status).

Moreover, the mandamus petition in this case cannot be viewed as truly "interlocutory." The petitioner's underlying claim is, at this point, an entirely separate matter that may never be reviewed in this Court (and, hence, may never be the subject of a claim for attorney fees under the EAJA). In *Cox v. West*, this Court's concern over piecemeal litigation prompted us to dismiss as premature a similar EAJA application for fees in connection with the mandamus petition filed in that case. *Cox v. West*, 13 Vet.App. 364 (2000), *revoked in part*, 13 Vet.App. 461 (2000). However, *Cox* was unique because in that case, the Court, instead of addressing the EAJA application, took note of the protracted delays in the case and reinstated the mandamus petition, with orders that the Secretary file status reports regarding the Board's timetable for adjudication of the case. *Id*. at 366-67. Hence, because the mandamus petition was still pending before the Court and no longer the subject of a final decision, the Court dismissed as premature the petitioner's EAJA application "without prejudice to a future filing under the EAJA after the Court acts on the petition." *Id*. In this case, our June 17, 2005, order granting the writ is a final decision and the Court retains no jurisdiction over the matter. *See Former Employees of Motorola Ceramic Prods. v. United States*, 336 F.3d 1360, 1366 (Fed. Cir. 2003)) (holding that remand predicated on agency error and requiring further agency proceedings confers prevailing-party status "without regard to outcome of agency decision" if the court does not

retain jurisdiction); *Zuberi v. Nicholson*, 19 Vet.App. 541, 547 (2006) (citing *Motorola, supra*, and concluding that appellant was a prevailing party "because he secured a remand based on an agency concession of error, and the Court ordered further agency action without retaining jurisdiction"). As such, the petitioner's EAJA application in this case is not premature; on the contrary, the petitioner would be barred from seeking EAJA fees if he had neglected to file that application within 30 days of the Court's final decision. *See* 28 U.S.C. § 2412; *see also Melkonyan v. Sullivan*, 501 U.S. 89, 96-97 (1991).

## B. Substantial Justification

Once an EAJA applicant alleges that the Secretary's position lacked substantial justification, the burden shifts to the Secretary to show that the Government's position was substantially justified at both the administrative and litigation stages of the matter in order to avoid paying EAJA fees. *See Locher v. Brown*, 9 Vet. App. 535, 537 (1996). To meet this burden, the Secretary must demonstrate that, based on "the totality of the circumstances, including merits, conduct, reasons given, and consistency with judicial precedent," his position at the administrative and litigation stages of the proceeding had "a reasonable basis in law and fact." *Stillwell v. Brown,* 6 Vet.App. 291, 302 (1994) (quoting *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988)).

The Secretary's failure to prevail on the merits of the case does not raise a presumption that his position was not substantially justified. *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988). As the Supreme Court noted in *Pierce v. Underwood*, "a position can be justified even though it is not correct," and should be considered substantially justified if "if a reasonable person could think it correct." *Underwood*, 487 U.S. at 566 n.2. Although the fact that "one other court agreed or disagreed with the Government does not establish whether its position was substantially justified," the observations of other courts are often considered relevant to that determination. *Underwood*, 487 U.S. at 568.

Frequently, cases before this Court present matters of first impression "involving good faith arguments of the government that are eventually rejected." *Stillwell*, 6 Vet.App. at 303. Arguments presented in a case of first impression are more likely to be considered substantially justified than those where the Court determines that the Secretary ignored existing law. *See Johnson (Leamon) v. Principi*, 17 Vet.App. 436 (2004) (holding that Secretary's position at the administrative level in

8

promulgating and applying a regulation was substantially justified); *Ozer v. Principi*, 16 Vet.App. 475, 479 (2002) (holding that the Secretary's position in promulgating the regulation was substantially justified, despite later invalidation of the regulation, because "there was no prior disapproval of or challenge to the regulation"); *Carpenter v. West*, 12 Vet.App. 316 (1999) (holding that it was not unreasonable for the Secretary not to have foreseen Court's expansion of 38 U.S.C. § 1318 caselaw). *Cf. Moore v. Brown*, 10 Vet.App. 436, 440-41 (1997) (concluding that Secretary's administrative position was not substantially justified where Board failed to comply with well-established statutory duty to assist).

Even in a case of first impression, however, the Court must determine whether the Secretary's position was justified given the totality of the circumstances. We must determine whether the issue presented "close" questions, and whether the Secretary sought an unreasonable interpretation or resolution of the matter. *See Felton v. Brown*, 7 Vet.App. 276, 282 (1994) (citing *Marcus v. Shalala,* 17 F.3d 1033, 1038 (7th Cir. 1994) (finding that Government's contention that the questions involved were "close" was controverted by the U.S. Supreme Court's statements that the Government policies were "manifestly contrary to statute" and "made little sense" and by the "strong disapproval" of relevant regulations by several circuits of the U.S. courts of appeals)). Other factors to be considered include whether "the statutory scheme to be considered is complex, or . . . the analysis required, even for a straightforward statute, is 'exceptional.'" *Golliday v. Brown,* 7 Vet.App. 249, 255 (1994) (citing *Stillwell*, 6 Vet. App. at 303); *see also Pottgieser v. Kizer*, 906 F.2d 1319, 1324 (9th Cir. 1990) (same).

In this matter, we hold that the Secretary's position on section 5904(b) was substantially justified at both the administrative and litigation levels. Although the Federal Circuit ultimately rejected the Secretary's argument and ordered issuance of the writ, we find, for the reasons set forth below, that the Secretary's position had "a reasonable basis in law and fact." *Underwood*, 487 U.S. at 566 n.2.

First, although the petitioner contends otherwise, the question presented in this case was indeed a matter of first impression. While it is true that the Federal Circuit determined previously that actions based on subsections 5904(c) and (d), (*see Scates, Hanlin*, and *Cox*, all *supra*), were "subject to the specialized review process" set forth in section 7105, the analysis contained in those

cases is not as illuminating as the petitioner suggests. Each of those cases involved the interpretation of an individual statutory subsection that *on its face* was readily recognized as a law that affects "the provision of benefits by the Secretary to veterans." 38 U.S.C. § 511(a). Hence, in resolving those cases, neither this Court nor the Federal Circuit was pressed to determine whether an analysis beyond a facial interpretation of the section 5904 provisions was appropriate.

In Mr. Bates' case, however, the Federal Circuit majority agreed that "[t]he argument that [section] 5904(b) is itself a 'law that affects the provision of benefits' is unpersuasive." *Bates*, 398 F.3d at 1360. Unlike sections 5904(c) and (d), section 5904(b) is not, on its face, "a law that affects the provision of benefits by the Secretary to veterans" under section 511(a). It was not until this case arose that the Federal Circuit decided that an analysis beyond explaining the "plain meaning" of that provision was necessary to resolve the issue.

Moreover, the route by which the Federal Circuit concluded that section 5904(b) was "a law that affects the provision of benefits" could not have been easily divined from existing caselaw and arguably may be described as "exceptional." *See Golliday*, *supra*. Specifically, the Federal Circuit had given no previous indication that the relevant inquiry for the application of section 511(a) was not limited to whether the statutory provision at issue "affects the provision of benefits" to veterans, but could include whether that provision was originally enacted in a public law that affected the provision of such benefits. In light of that fact, and because both this Court and the Federal Circuit have previously addressed section 5904 by individual subsection as opposed to a single public law, the Secretary's implicit choice to interpret the term "law" as an individual statutory subsection was reasonable. As Judge Bryson noted in his concurrence:

> [I]t is commonplace to refer to single statutory sections and subsections as "laws," and not to reserve that designation exclusively for whole public laws. This is not to say that a statutory section or subsection is the only meaning of the term "law," but simply that it cannot reasonably be claimed that the "plain meaning" of the term "law" is restricted to public laws.

398 F.3d at 1368 n.2 (Bryson, J., concurring) (citations omitted).

Furthermore, although VA is required by policy and statute to provide veterans a "strongly and uniquely pro-claimant" administrative review process, *Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998), it could not be assumed that attorneys or veterans' representatives would be entitled to,

10

or in need of, such a process (or that such a process would be available when no benefits claimant is involved in the case) for purposes of the termination of accreditation. In sum, the Court finds that, based on the totality of the circumstances, a "reasonable person" could find the Secretary's interpretation of the statutory scheme to be reasonably grounded in law and fact. Accordingly, the Court holds that the Secretary's position with respect to the jurisdiction of the Board and the Court and sections 511(a) and 5904(b) was substantially justified.

## C. Special Circumstances

Pursuant to 28 U.S.C. § 2412 (d)(1)(A), a court may not make an EAJA award to a party if it "finds . . . that special circumstances make an award unjust." The Government bears the burden of raising this affirmative defense and must demonstrate that such special circumstances militate against an EAJA award. *See Perry v. West*, 11 Vet.App. 319, 325 (1998); *Doria v. Brown*, 8 Vet.App. 157, 163 (1995). In *Doria*, the Court noted two types of special circumstances: "[S]ituations where the government proffers novel but credible extensions and interpretations of the law; and . . . situations 'where equitable considerations dictate an award should not be made.'" *Id.* at 162. In *Perry*, the Court adopted a definition of the equitable-considerations prong of "'special circumstances' that predominantly relies upon 'unclean hands.'" *Perry, supra; see also Locher*, 9 Vet.App. at 540; *Oguachuba v. INS*, 706 F.2d 93 (2d Cir. 1983).

In the instant matter, the Secretary contends that the petitioner has "unclean hands," alleging that the petitioner "repeatedly violated federal law and unlawfully charged . . . over $100,000 [] of VA disability compensation benefits to which he was not legally entitled." Resp. at 13. However, as the petitioner notes, the Secretary's allegations are presently the subject of a direct appeal to the Board, and this Court may ultimately review the Board decision in that appeal. Hence, considering the Secretary's allegations in the present context would be "both premature and inappropriate," and we will refrain from doing so.

## IV. Conclusion

On the basis of the foregoing analysis, the petitioner's application for attorney fees and expenses is DENIED.

11