DAVIS, Judge:
Veteran Freddie Butts applies through counsel for an award of attorney fees and expenses in the amount of $3,030.02 pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d). The Court *77 has jurisdiction pursuant to 28 U.S.C. § 2412(d)(2)(F) to award reasonable attorney fees and expenses. Mr. Butts filed his EAJA application within the 30-day period set forth in 28 U.S.C. § 2412(d)(1)(B), and his application satisfies that section’s content requirements. See Scarborough v. Principi, 541 U.S. 401, 408, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004). The Secretary filed a response challenging the EAJA application in which he argued both that Mr. Butts is not a prevailing party and that the Secretary’s position in the merits case was substantially justified. Mr. Butts filed a reply to the Secretary’s response. On July 29, 2015, this case was submitted to the en banc Court pursuant to title YII(b)(2)(A) of the Court’s Internal Operating Procedures. Butts v. McDonald, U.S. Vet.App. No. 14-3019 (unpublished order July 29, 2015). On September 22, 2015, the en banc Court held oral argument. For the following reasons, the Court will grant in part Mr. Butts’s EAJA application.
I. BACKGROUND
In cases that present an “exceptional or unusual” disability picture, 38 C.F.R. § 3.321(b)(1) authorizes the Under Secretary for Benefits or the Director of VA’s Compensation Service to approve extras-chedular evaluations “commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities.” In March 2013, the Court issued an en banc opinion in Johnson v. Shinseki to address whether § 3.321(b)(1) requires VA to consider a veteran’s collective, rather than individual, disabilities. Johnson v. Shinseki (Johnson I), 26 Vet.App. 237 (2013) (en banc), rev’d sub nom. Johnson v. McDonald (Johnson II), 762 F.3d 1362 (Fed.Cir.2014). A five-judge majority in Johnson I determined that the language of § 3.321(b)(1) was ambiguous and thus deferred to the Secretary’s interpretation of the regulation as limiting extraschedular consideration to disabilities on an individual basis. Id, Mr. Johnson appealed to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in June 2013. In July 2014, while Johnson I was on appeal, the Board of Veterans’ Appeals (Board) issued a decision in Mr. Butts’s case that denied referral for extraschedular consideration for various service-connected disabilities.
In August 2014, the Federal Circuit issued Johnson II, reversing Johnson I. The Federal Circuit concluded that the “plain language of § 3.321(b)(1) is unambiguous” and “provides for referral for extra-sche-dular consideration based on the collective impact of multiple disabilities.” Johnson II, 762 F.3d at 1365-66 (also noting that there exists “no policy justification for interpreting § 3.321(b)(1) in the way that the government advocates”). In September 2014, following Johnson II, Mr. Butts filed a Notice of Appeal from the Board’s July 2014 decision. On March 9, 2015, the parties filed a joint motion for partial remand (JMPR). The JMPR stated that the “[t]he parties agree that vacatur and remand are warranted because the Board’s decision finding that referral for an extraschedular rating for the service-connected disabilities on appeal [is not warranted] does not comply with the requirements of 38 C.F.R. § 3.321 (2014).” JMPR at 2. The JMPR cited Johnson II and noted that the Board’s July 2014 decision failed to consider Mr. Butts’s disabilities on a collective basis. The Court granted the JMPR on March 12, 2015, and remanded the matter to the Board. Mr. Butts’s EAJA application followed.
II. THE PARTIES’ ARGUMENTS
In his EAJA application, Mr. Butts asserts both that he is a prevailing party and that the Secretary’s position on the merits *78 was not substantially justified. Appellant’s Application for Attorney Fees and Expenses (Appl.) at 2-4. The Secretary responds that Mr. Butts is not a prevailing party because the JMPR was based on a change in precedent, rather than Board error. Secretary’s Response (Resp.) to Appl. at 4. The Secretary also argues that he was substantially justified at both the administrative and litigation stages of Mr. Butts’s case. At the administrative stage, the Secretary contends, the Board was substantially justified because its decision was consistent with Johnson I, which was then-current law upholding the Secretary’s interpretation of § 3.321(b)(1). Id. at 9-13. He also argues that this Court’s en banc decision in Johnson I demonstrates that reasonable minds could disagree with the Federal Circuit’s determination that the plain meaning of § 3.321(b)(1) requires the Secretary to consider disabilities collectively. Secretary’s Resp. to Court’s Aug. 20, 2015, Order at 10-11. Additionally, the Secretary asserts that his interpretation of § 3.321(b)(1) at the administrative stage was reasonable in light of the scheme of the rating schedule, which assigns schedular ratings on a disability-by-disability basis. See id. at 11. At the litigation stage, the Secretary asserts, he “ ‘cooperated in speedily resolving the litigation’ ” by promptly entering into a JMPR based on Johnson II. Secretary’s Resp. to Appl. at 13 (quoting Essex Electro Eng’rs, Inc. v. United States, 757 F.2d 247, 253 (Fed.Cir.1985)).
In reply, Mr. Butts argues that he is a prevailing party because the JMPR was implicitly based on the Board’s failure to properly apply § 3.321(b)(1), as Johnson II “did not create a new interpretation of the regulation, but simply explained what the regulation has always said.” Appellant’s Reply to Secretary’s Resp. at 1-2, 5. Mr. Butts also alleges that the Secretary was not substantially justified at the administrative stage because the Secretary’s position was “wholly unsupported by the plain language” of § 3.321(b)(1), which “contained the same language [then] as it does now,” requiring the Board to consider his collective disability picture. Id. at 8-10. He does not challenge the Secretary’s substantial justification at the litigation stage. See id. at 8, 11.
III. ANALYSIS
A. Applicable Law
By authorizing attorney fees and expenses to parties who prevail in civil litigation against the Government, EAJA “ensure[s] that certain individuals ... will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved” in vindicating their rights.[2] Scarborough, 541 U.S. at 407, 124 S.Ct. 1856 (internal citations omitted); see Comm’r, I.N.S. v. Jean, 496 U.S. 154, 163, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990) (“[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions.”). EAJA is particularly important in the pro-claimant veterans benefits system, as it aids veterans who choose to appeal VA decisions erroneously denying them benefits they have earned. Kelly v. *79 Nicholson, 463 F.3d 1349, 1353 (Fed.Cir.2006).
The Court may award EAJA fees when the applicant is a prevailing party and the Secretary’s position was not substantially justified. 28 U.S.C. § 2412(d)(1)(A)-(B); Scarborough, 541 U.S. at 407-08, 124 S.Ct. 1856. “The appellant has the burden of demonstrating prevailing-party status under the EAJA.” Rollins v. Principi, 17 Vet.App. 294, 298 (2003). Prevailing-party status is established through either “a merits-stage remand predicated upon the Court’s finding of error or a concession of error by the Secretary.” Vahey v. Nicholson, 20 Vet.App. 208, 211 (2006). A joint motion for remand (JMR) may confer prevailing-party status if the JMR contains an explicit or implicit admission of error. Thompson v. Shinseki, 24 Vet.App. 176, 178 (2010). In determining whether a JMR contains an admission of error, the Court “must look to the words of the motion.” Briddell v. Principi, 16 Vet.App. 267, 272 (2002) (emphasis omitted).
In contrast, the Secretary bears the burden of demonstrating that his position was substantially justified at both the administrative and litigation stages. Locher v. Brown, 9 Vet.App. 535, 537 (1996); see Stillwell v. Brown, 6 Vet.App. 291, 302 (1994) (“[T]he entirety of the conduct of the government is to be analyzed, both the government’s litigation position and the action or inaction by the agency prior to the litigation.”). Regarding the administrative stage, the Court evaluates “the reasonableness of ‘the underlying government action at issue.’” Felton v. Brown, 7 Vet.App. 276, 280 (1994) (quoting Wilderness Soc’y v. Babbitt, 5 F.3d 383, 388 (9th Cir.1993)). Regarding the litigation stage, the Court “looks to the circumstances surrounding the resolution of the dispute.” Coleman v. Nicholson, 21 Vet.App. 386, 389 (2007).
“Substantially justified” means “justified to a degree that could satisfy a reasonable person.” Pierce v. Underwood, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). Thus, even an incorrect position can be justified “if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.” Id. at 566 n. 2, 108 S.Ct. 2541; see Stillwell, 6 Vet.App. at 302. In determining the reasonableness of the Secretary’s position, the Court must analyze the “ ‘totality of the circumstances’ surrounding the government’s adoption of a particular position.” Patrick v. Shinseki, 668 F.3d 1325, 1332 (Fed.Cir.2011). Such factors include “merits, conduct, reasons given, and consistency with judicial precedent and VA policy with respect to such position, and action or failure to act,” along with any other applicable circumstances.[3] *80 Stillwell, 6 Vet.App. at 302; see Cline v. Shinseki, 26 Vet.App. 325, 327 (2013). No one factor is dispositive; thus, whether the Government’s position comported with then-existing precedent “is an undeniably important factor,” but “does not ... resolve the substantial justification inquiry.” Patrick, 668 F.3d at 1332; see Bowey v. West, 218 F.3d 1373, 1377 (Fed.Cir.2000) (explaining that substantial justification is measured “against the law that was prevailing at the time the government adopted its position”). Indeed, where the Secretary “interprets a statute in a manner that is contrary to its plain language and unsupported by its legislative history, it will prove difficult to establish substantial justification.” Patrick, 668 F.3d at 1330-31.
Our dissenting colleagues believe that the above-quoted language is dicta because it was not essential to Patrick’s holding. We disagree that this language is dicta, as this language is tied directly to the Federal Circuit’s holding that a court must “ ‘look at the entirety of the government’s conduct,’ including the agency actions that gave rise to the litigation,” to determine whether the Government’s position was substantially justified. Id. at 1333-34 (quoting Chiu v. United States, 948 F.2d 711, 715 (Fed.Cir.1991)). Dicta or not, the Federal Circuit’s considered view on a matter is entitled to deference. See DaimlerChrysler Corp. v. United States, 361 F.3d 1378, 1385 n. 3 (Fed.Cir.2004) (noting that, even if a Supreme Court statement were dicta, the Federal Circuit “would feel obligated to follow the Supreme Court’s explicit and carefully considered statements”).
Further, to the extent that our dissenting colleagues contend that Patrick is inapplicable because it (1) involved the Secretary’s interpretation of a statute, and (2) concerned situations where the interpretation of a statute was contrary to its plain language and not supported by the legislative history, we find their rationale lacking. As to the first contention, the first case cited by Patrick in support of the quoted proposition concerned the interpretation of a regulation, see Patrick, 668 F.3d at 1331 (citing Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 967 (D.C.Cir.2004)), and there is no basis for limiting Patrick’s guidance to statutory interpretation, see Smith v. Brown, 35 F.3d 1516, 1523 (Fed.Cir.1994) (noting that canons of statutory interpretation apply to interpreting regulations). Moreover, Patrick is indeed applicable because the interpretation of § 3.321(b)(1) necessarily required the Federal Circuit to consider the regulation’s authorizing statute. Johnson II, 762 F.3d at 1365 (“[T]he plain language of § 3.321(b)(1) is consistent with the language of [38 U.S.C.] § 1155 authorizing the regulation.”).
As to the second contention, although legislative history is not involved in Mr. Butts’s case, the dissenters fail to appreciate the significance of the Federal Circuit’s finding that there was no poliey basis for the Secretary’s proffered interpretation, which was contrary to the plain wording of his own regulation. Johnson II, 762 F.3d at 1365-66. Further, although, as our dissenting colleagues note, the Federal Circuit did not specifically hold that the regulatory history of § 3.321(b)(1) does not support the Secretary’s interpretation, the Federal Circuit’s observation that there is no policy justification for the Secretary’s *81 interpretation is an implicit finding that there is no regulatory support for the interpretation.
Finally, we reiterate that it is the Secretary’s burden to demonstrate that he was substantially justified in his actions under the totality of the circumstances and, in this instance—as stated in the text of the Court’s decision—he fails to do so.
B. Prevailing Party
Contrary to the Secretary’s argument, the parties’ JMPR was predicated on administrative error, rather than a change in caselaw. Although the JMPR discusses Johnson II, the motion specifically states that remand is warranted because the Board decision “does not comply with the requirements of 38 C.F.R. § 3.321 (2014).” JMPR at 2 (emphasis added). This language explicitly concedes error. See Schafrath v. Derwinski, 1 Vet.App. 589, 592 (1991) (“The B[oard] is not free to ignore regulations which the VA has adopted.”). Notably, the Court rejects the Secretary’s implication at oral argument that a remand order based on administrative error must contain the term “error.” Oral Argument at 23:20-25, Butts v. McDonald, U.S. Vet.App. No. 14-3019 (Argued Sept. 22, 2015), https://www.uscourts.cavc. gov/oral_arguments_audio.php. As the Federal Circuit has recognized, administrative error may be clear from the record despite “artfully worded orders” that avoid certain terminology. Kelly, 463 F.3d at 1355 (discussing a Court remand order); see also Zuberi v. Nicholson, 19 Vet.App. 541 (2006) (determining that a JMR based on the Board’s failure to discuss an applicable regulation conceded administrative error). Thus, the language in the JMPR clearly concedes error and the Court holds that Mr. Butts is a prevailing party for purposes of the EAJA. See Thompson, 24 Vet.App. at 178.
C. Substantial Justification
As explained above, the following factors are among those to be considered when determining whether the Secretary’s position is substantially justified: “[M]er-its, conduct, reasons given, and consistency with judicial precedent and VA policy with respect to such position, and action or failure to act.” Stillwell, 6 Vet.App. at 302; see Cline, 26 Vet.App. at 327 (“The Court will consider the applicable Stillwell factors, as well as any other circumstances that may apply, in determining whether the totality of the circumstances supports the reasonableness of VA’s position in this case.”). In this matter, as in Cline, the Stillwell factors of reasons given, consistency with judicial precedent, and consistency with VA policy “have a high degree of overlap because much of the Secretary’s reasoning is based on his adherence to prior precedent.” Cline, 26 Vet.App. at 329.
The Secretary argues that his position at the administrative stage was substantially justified because the Board was bound by this Court’s decision in Johnson I and the Board decision was consistent with Johnson I. Secretary’s Resp. to Appl. at 4; see Clemmons v. West, 12 Vet.App. 245, 247 (1999) (finding the Secretary’s administrative position substantially justified where the Board relied on then-current caselaw). The Secretary also asserts under his “reasons given” that his interpretation of § 3.321(b)(1) at the administrative stage was reasonable in light of the scheme of the rating schedule because it assigns schedular ratings on a disability-by-disability basis. See Secretary’s Resp. to Court’s Aug. 20, 2015, Order. At oral argument, the Secretary could not articulate any additional factors demonstrating the reasonableness of his position under the totality-of-the-cireumstances test. See Oral Argument at 38:18-39:51, Butts v. *82 McDonald, U.S. Vet.App. No. 14-3019 (Argued Sept. 22, 2015), https://www.uscourts. cave.gov/oraLarguraents_audio.php (responding “I believe that is all [the factors] for this case” when asked by the Court whether it should consider factors other than consistency with Johnson I and the scheme of the rating schedule).

1. Reasons Given and Consistency with Judicial Precedent

The Secretary avers that the July 2014 Board decision was consistent with Johnson I. However, the Board’s decision does not cite or discuss that opinion. It is therefore unclear whether the Board relied on the then-current Johnson I decision to deny referral for extraschedular consideration. Nevertheless, the Board is bound by a decision of this Court while an appeal is pending. Ribaudo v. Nicholson, 20 Vet.App. 552, 563 (2007) (en banc). Thus, one factor that weighs in favor of the Secretary’s position is that the Board’s decision was consistent with existing judicial precedent. See Stillwell, 6 Vet.App. at 302 (explaining that “consistency with judicial precedent” is a factor to consider).
As the Federal Circuit noted in Patrick, however, “[t]he fact that the Veterans Court had previously upheld the VA’s erroneous interpretation of [a statute] does not ... resolve the substantial justification inquiry.” 668 F.3d at 1332. This is true even where the Court addressed a question of first impression, see Felton, 7 Vet.App. at 281 (“We emphasize, however, that we are not adopting a per se rule that a case of first impression will always render the Government’s position substantially justified.”), as “‘the EAJA does not suggest that an agency’s position is substantially justified because its policy goes years without challenge or change,’ ” id. (quoting Edwards v. Griepentrog, 783 F.Supp. 522, 525 (D.Nev.1991)). Thus, under the totality-of-the-circumstances test, the Secretary’s compliance with precedent does not relieve the Court of its duty to evaluate the reasonableness of the Secretary’s regulatory interpretation and his conduct at the administrative level. See Healey v. Leavitt, 485 F.3d 63, 67 (2d Cir.2007) (“[T]he Government’s prelitigation conduct or its litigation position could be sufficiently unreasonable by itself to render the entire Government position not substantially justified.” (internal citations and quotations omitted)).
Our dissenting colleagues contend that the varying views of the Judges in Johnson I demonstrate that reasonable minds can differ. Post at 89-90 (Lance, J., dissenting), 102 (Bartley, J., dissenting). This argument assumes that the varying viewpoints were all reasonable. Notably, the majority in Johnson I did not render a de novo interpretation of § 3.321(b)(1) and instead deferred to the Secretary’s interpretation based on the erroneous determination that the regulation was ambiguous. Johnson I, 26 Vet.App. at 243. Compare id. at 251 (Moorman, J., concurring) (deferring to the Secretary’s interpretation because “Federal Circuit precedent requires deference despite an alternative reading of the regulation that appears clear on its face”), with Smith v. Nicholson, 451 F.3d 1344, 1349-50 (Fed.Cir.2006) (stating that the Secretary’s interpretation of his own regulations is “of controlling weight unless it is plainly erroneous or inconsistent with the regulation” (internal quotation marks omitted)). Otherwise stated, the majority simply erred when it deferred to the Secretary’s interpretation in Johnson I, and that error does not bootstrap the Secretary’s error into reasonable action under the totality of the circumstances.
Further, one of our dissenting colleagues contends that the Board’s reliance on our binding precedent is paramount to *83 the substantial-justification analysis, and that failing to find that the Secretary met his burden in this context “chills the Government’s ability to invoke substantial justification.” Post at 91 (Lance, J., dissenting). Such an analysis, however, turns compliance with prior precedent into a dis-positive factor, contrary to the requirement that the substantial justification analysis be based on the totality of the circumstances. See Patrick, 668 F.3d at 1332. It is therefore relevant to consider the totality of the circumstances surrounding the Secretary’s action, including whether the Secretary “had adopted an interpretation ... wholly unsupported by either the plain language of the statute or its legislative history.” Id. at 1333.
Here, the Secretary’s interpretation of § 3.321(b)(1) contradicted the plain language of the regulation, which provides for the referral of an extraschedular evaluation based on the combined effect of multiple disabilities. This factor weighs heavily against a finding of substantial justification, and, while not dispositive, makes it “difficult to establish substantial justification.” Id. at 1331; see also Johnson II, 762 F.3d at 1365-66 (holding that the language in § 3.321(b)(1) “contemplates that multiple disabilities may be considered together in referring veterans for extrasche-dular consideration”).[4]
In sum, contrary to our dissenting colleagues’ position, nothing in this opinion limits the binding authority of this Court’s decisions or authorizes the Secretary to ignore the Court’s rulings. Rather, this opinion merely reflects that, under the EAJA’s totality-of-the-circumstances analysis, the Secretary may be required to pay EAJA fees despite following precedent. See Patrick, 668 F.3d at 1332 (noting that compliance with precedent is one factor). Beyond being contemplated by the EAJA framework, the fact that the Secretary may have to pay EAJA fees despite following precedent is necessary to effectuate EAJA’s purpose: to eliminate financial barriers for challenging governmental actions. See Comm’r, I.N.S., 496 U.S. at 163, 110 S.Ct. 2316. If compliance with precedent was a bar to EAJA, as the dissent effectively posits, veterans with limited financial means would face even greater difficulty obtaining counsel to bring valid challenges to existing caselaw.

2. Reasons Given and Consistency with VA Policy

The Secretary also avers that the July 2014 Board decision was consistent with VA policy. The Federal Circuit, however, determined that there was “no logic” and no policy support for his interpretation that § 3.321(b)(1) applied only to service-connected disabilities on a disability-by-disability basis “and not also on the collective impact of all of the veteran’s disabilities.” Johnson II, 762 F.3d at 1366 (noting that there is no basis for a policy *84 “[l]imiting referrals for extra-schedular evaluation to considering a veteran’s disabilities individually” while “ignoring] the compounding negative effects that each individual disability may have on the veteran’s other disabilities”). Further, as Judge Davis stated in his dissent to Johnson I, which Judge Bartley joined, “the VA disability evaluation process frequently requires that it evaluate multiple disabilities collectively in a manner clearly beyond the application of fixed disability percentages for individual disabilities,” and “[ejvaluat-ing the cumulative effect of several service-connected disabilities together is therefore in no way outside the ability of VA raters and a ‘disability-by-disability interpretation of § 3.321(b)’ is no more ‘consistent with the statutory and regulatory scheme’ than the cumulative approach.”[5] Johnson I, 26 Vet.App. at 266 (Davis, J., dissenting) (internal citation omitted). Thus, the Court is not persuaded that consistency with VA policy is a factor that weighs in favor of substantial justification.

3. Reasons Given and Consistency with Scheme of VA Disability Benefits

The Secretary argues that his interpretation of the regulation was reasonable based on the scheme of the rating schedule. The Court is not persuaded by this argument given that the Secretary’s interpretation of § 3.321(b)(1) was found to be inconsistent with both the language and the purpose of the regulation, which is “ ‘[t]o accord justice ... to the exceptional case where the schedular evaluations are found to be inadequate.’ ” Johnson II, 762 F.3d at 1365 (citing § 3.321(b)(1)); see General Rating Considerations, Exceptional Cases, 26 Fed.Reg. 1561, 1583 (Feb. 24, 1961) (noting that an extraschedular rating may be awarded based on “disability or disabilities”). Additionally, the Federal Circuit found the plain language of § 3.321(b)(1) consistent with 38 U.S.C. § 1155, the statute authorizing the Secretary to “adopt and apply a schedule of ratings of reductions in earning capacity from specific injuries or combinations of injuries.” Johnson II, 762 F.3d at 1365.
Further, the Secretary’s interpretation is not supported by the promulgating history of the regulation. See Johnson I, 26 Vet.App. at 257-59 (Kasold, C.J., dissenting). The language in section 1155 permitting extraschedular evaluations based on a veteran’s combined injuries distinguishes this case from Felton, in which the Court found the Secretary substantially justified in promulgating a later-invalidated regulation “[gjiven the statutory silence on the particular matter.” 7 Vet.App. at 284. The statute here is not silent; to the contrary, it authorizes the Secretary to consider collective disabilities for evaluating a veteran’s entitlement to disability compensation. Therefore, the Secretary has not *85 demonstrated that “the regulation it violated was ambiguous, complex, or required exceptional analysis.” See Meinhold v. U.S. Dep’t of Defense, 123 F.3d 1275, 1278 (9th Cir.1997) (“The government may avoid EAJA fees if it can prove that the regulation it violated was ambiguous, complex, or required exceptional analysis”). Taken together, these factors weigh against the Secretary.
Significantly, despite the language of both the statute and regulation, the Secretary adopted guidelines from the VA Adjudication Procedures Manual (M21-1MR) that say absolutely nothing about a veteran’s collective disability picture. See M21-1MR, pt. III, subpt. iv., ch. 6, sec. B(5)(c) (instructing that claims be submitted for extraschedular consideration under § 3.321(b)(1) if “schedular evaluations are considered to be inadequate for an individual disability”). The guidelines interpreting the statute and regulation are hardly consistent with the legislative scheme and the veterans benefit arena generally, which is “intended to be uniquely pro-claimant.” Kelly, 463 F.3d at 1353 (citing Hodge v. West, 155 F.3d 1356, 1362-63 (Fed.Cir.1998)). This is another factor that weighs against the Secretary’s position.
Presenting an argument not argued by the Secretary in his briefing on substantial justification, our dissenting colleagues contend that the Secretary was reasonably justified at the administrative level in part because the M21-1MR contains no language regarding a veteran’s collective disability picture, and because “the Secretary represented, and this Court has no cause to doubt, that ‘a sampling of Board decisions demonstrates that the Board generally follows VA’s long-standing interpretation’ of the regulation to require individualized extraschedular consideration.” Post at 100 (Bartley, J., dissenting) (internal citation omitted). The argument that the M21-1MR is silent on collective disability is irrelevant because the M21-1MR does not preclude extraschedular evaluations based on the veteran’s collective disabilities. See Johnson I, 26 Vet.App. at 259-60 (Kasold, J., dissenting) (noting that the M21-1MR does not specifically prevent rating officials from forwarding a claim for extraschedular consideration on a collective basis). Even if it did, the M21-1MR cannot trump § 3.321(b)(1), which clearly provides for extraschedular consideration on a collective disability basis. See Johnson II, 762 F.3d at 1365.
Moreover, we note that the Secretary has “acknowledge[d] that prior Board decisions might be contrary to this interpretation and ‘might misapply the regulation.’ ” Johnson v. Shinseki, No. 10-1785, 2012 WL 3129191 (Aug. 2, 2012) (per curiam order) (quoting Appellee’s Memorandum of Law at 8 (June 15, 2012)). Regardless, the Court need not accept the Secretary’s bald beliefs regarding Agency conduct. See Andrew v. Bowen, 837 F.2d 875, 878-79 (9th Cir.1988) (“The EAJA requires courts to examine the government’s conduct, not the Secretary’s beliefs with respect to his policies.”); see also Felton, 7 Vet.App. at 280 (the substantial-justification test “is one of reasonableness, not the agency’s own beliefs regarding a particular policy” (quoting Wilderness Society, 5 F.3d at 388)), This is particularly true where, as here, the Secretary bears the burden of demonstrating substantial justification and provides only weak support for his assertion that he had long applied the erroneous regulatory interpretation.[6] Thus, we are *86 not persuaded that the alleged longstanding practice is longstanding or consistently applied.
Our dissenting colleagues argue that there are additional “reasons given” by the Secretary, including that the Secretary was interpreting his own regulation and such interpretation is entitled to deference. Post at 98-99 (Bartley, J., dissenting). Deference to the Secretary’s interpretation of his own regulation, however, applies only when the regulation is ambiguous. See Christensen v. Harris Cty., 529 U.S. 576, 588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). An agency’s interpretation is not controlling if it is plainly erroneous. See Thun v. Shinseki, 572 F.3d 1366, 1369 (Fed.Cir.2009). Moreover, it is the Secretary who bears the burden of demonstrating that his position was reasonable and therefore substantially justified. By arguing that his interpretation was entitled to deference during litigation, the Secretary does not meet his burden of demonstrating substantial justification at the administrative stage.

4. Totality of the Circumstances

Considering the totality of the circumstances, the Court notes that, although the Secretary was bound by our decision in Johnson I even while it was on appeal, he was not required to adjudicate claims involving an application of Johnson I; otherwise stated, he could have sought a stay in the adjudication of Mr. Butts’s claim until the Federal Circuit issued Johnson II. See Ribaudo, 20 Vet.App. at 563; Ramsey v. Nicholson, 20 Vet.App. 16, 38-39 (2006) (“[W]here the Secretary desires to stay the effect of any decision from this Court pending appeal [to the Federal Circuit], the proper course is to file in the court that has jurisdiction over the particular case a motion to stay the effect of that case.”). Seeking a stay of adjudication may have been prudent given that Johnson I involved a split decision.
To be sure, we do not suggest that the Secretary should seek a stay in every prec-edential case that is on appeal. Given all the factors noted, however, we find that the totality of the circumstances outweigh the Secretary’s decision to apply Johnson I rather than seek a stay and, all factors considered, we find that the Secretary fails to demonstrate that he was substantially justified in the administrative adjudication of Mr. Butts’s claim. See Locher, 9 Vet.App. at 537. Indeed, to hold otherwise here would undermine the purpose of EAJA and potentially deter deserving veterans from challenging VA’s regulatory interpretations even when the Secretary’s actions are contrary to the plain wording of his own regulation and are pending *87 judicial review. See Scarborough, 541 U.S. at 407, 124 S.Ct. 1856; Comm’r, I.N.S., 496 U.S. at 163, 110 S.Ct. 2316.
In sum, distilling all the Secretary’s arguments (as well as our dissenting colleagues’ comments), there is really only one factor weighing in favor of finding substantial justification at the administrative stage: the Board’s obligation to follow judicial precedent. Although that factor is important, under the totality of the circumstances we hold that the obligation to follow judicial precedent in this instance is heavily outweighed by (1) the Secretary’s failure to abide by the plain wording of § 3.321(b)(1), and is further outweighed by (2) the fact that the Secretary had no policy basis for his proffered interpretation; (3) the fact that our Johnson I decision was a mixed decision and on appeal while the Secretary continued to misapply § 3.321(b)(1); and (4) the fact that the Secretary had the option of staying the case pending a decision on appeal.
Because the Secretary has not shown that his position was substantially justified at the administrative stage, the Court need not discuss substantial justification at the litigation stage. Locher, 9 Vet.App. at 537 (“In order to prevail, the Secretary must show substantial justification for both his administrative and litigation positions.”). Accordingly, the Court holds that the Secretary has failed to demonstrate that, under the totality-of-the-circumstances analysis, his position in Mr. Butts’s case at the administrative stage was substantially justified. See Patrick, 668 F.3d at 1332; Locher, 9 Vet.App. at 537. Mr. Butts is therefore entitled to an EAJA award.
D. Fee Award
Having determined that Mr. Butts is entitled to an EAJA award, the Court must determine whether his requested fees are reasonable. See 28 U.S.C. § 2412(d)(2)(A); Ussery v. Brown, 10 Vet.App. 51, 53 (1997). “In determining reasonableness, the Court will consider whether the hours claimed were (1) unreasonable on their face; (2) otherwise contraindicated by the factors for determining reasonableness itemized in Ussery ...; or (3) persuasively opposed by the Secretary.” Sperry v. Shinseki, 24 Vet.App. 1, 6 (2010).
The Secretary does not contest the reasonableness of the $3,030.02 award claimed by Mr. Butts. Upon reviewing Mr. Butts’s application, however, the Court notes that it contains mathematical errors. Mr. Butts requests $2,169.19 based on 11.3 hours of work by nonattorney practitioner Daniel Marusak at a rate of $191.96 per hour, although 11.3 hours of work at that rate totals $2,169.15. Therefore, $2,169.15 will be awarded. See Ussery, 10 Vet.App. at 53. Mr. Butts also requests $441.53 for 2.3 hours of work by attorney Judy Done-gan at a rate of $191.96; because 2.3 hours of work at that rate equals $441.51, only $441.51 will be awarded. See id. Mr. Butts’s application is otherwise reasonable, and the Court will therefore award Mr. Butts $3,029.96 of the $3,030.02 he requested.
IV. CONCLUSION
On consideration of the foregoing, Mr. Butts’s EAJA application is GRANTED in the amount of $3,029.96.
DAVIS, Judge, filed the opinion of the Court.
KASOLD, Judge, filed an opinion concurring in part and dissenting in part.
LANCE, Judge, filed a dissenting opinion in which MOORMAN, Judge, joined.
*88 BARTLEY, Judge, filed a dissenting opinion in which LANCE, PIETSCH, and MOORMAN, Judges, joined.
MOORMAN, Judge, filed a dissenting opinion.

. As a Senate report explained, Congress enacted the EAJA because
[f]or many citizens, the costs of securing vindication of their rights and the inability to recover attorney fees preclude resort to the adjudicatory process.... When the cost of contesting a Government order, for example, exceeds the amount at stake, a party has no realistic choice and no effective remedy. In these cases, it is more practical to endure an injustice than to contest it.
S. Rep. No. 96-253, at 5 (1979).

. Our dissenting colleagues’ major criticism of our decision is embodied in the statement that the majority gives "lip service” to the totality of the circumstances but improperly focuses "on only one factor”—the Federal Circuit’s opinion in Johnson II. Post at 92 (Bartley, J., dissenting). Our dissenting colleagues contend that this "unfortunate fixation” has led the majority to either "ignore” or "miss” other factors. Post at 96 (Bartley, J., dissenting). Contrary to this assertion, we have considered relevant factors, and particularly those factors argued by the Secretary. Our dissenting colleagues, however, go to great lengths in an exhaustive opinion to present their own justification for the Secretary’s position, even though this Court has observed that "the function of any federal court does not include ... research for the government’s side of a case” because “it is unthinkable that the Court fill the role of the Secretary while resolving the appeals before it.” MacWhorter v. Derwinski, 2 Vet.App. 133, 135-36 (1992). Indeed, although the Secretary made his argument for substantial justification in two pleadings that consist of nine pages, our dissenting colleagues have produced a 24-page opinion contending that the Secretary was substantially justified. Even despite our dis *80 senting colleagues’ efforts to argue the Secretary’s case and their accusation that we have applied an "erroneous legal test,” Post at 92 (Bartley, X, dissenting), it is clear that our colleagues merely disagree with the weight the majority has assigned to various factors under the totality-of-the-circumstances test.

. Some of our dissenting colleagues contend that our reliance on Johnson II is improper because the reasonableness of the Secretary’s actions at the administrative stage must be assessed only in light of the information available at that time. This view, however, misreads our consideration of Johnson II. Our analysis of Johnson II focuses on why the Federal Circuit determined that the Secretary was wrong; i.e., the fact that the Secretary’s proffered interpretation contravened the plain language of the regulation, lacked policy support, and was not logical. See Johnson II, 762 F.3d at 1366; see also Taucher v. Brown-Hruska, 396 F.3d 1168, 1174 (D.C.Cir.2005) (“Courts evaluating substantial justification must ... analyze why the government's position failed in court."). These factors did not suddenly materialize after the Federal Circuit issued its opinion; rather, the shortcomings in the Secretary's position predated Johnson II and the underlying Board decision. The Federal Circuit merely highlighted these preexisting issues in Johnson II.

. One of our dissenting colleagues argues that the scheme or the rating schedule supports the Secretary’s interpretation because the VA compensation system requires that each disability be rated individually and thereafter combined under the combined ratings table when necessary. Post at 90-91 (Lance, J., dissenting). He notes that total disability ratings based on individual unemployability (TDIU) are the "only deviation from this system,” because TDIU involves a "unique question ... explicitly requiring an analysis of the combined effects of multiple conditions.” Id., n. 10 (citing 38 C.F.R. § 4.16(a) (2015)). Like TDIU and § 4.16(a), however, referral for ex-traschedular consideration under § 3.321(b)(1) involves a unique question that arises only in the "exceptional case” where schedular evaluations are found to be inadequate. 38 C.F.R. § 3.321(b)(1). Further, § 3.321(b)(1) explicitly requires an analysis of the combined effects of multiple conditions because the regulation permits an extrasche-dular award based on the impairment of earning capacity “due exclusively to the service-connected disability or disabilities." Id. (emphasis added); see Johnson II, 762 F.3d at 1365.

. Our dissenting colleagues also cite a number of cases for the proposition that an agency can be substantially justified even when it is wrong. We acknowledge that fact; however, we reiterate that the substantially justified analysis requires consideration of the totality *86 of the circumstances surrounding an agency’s actions, and the cases cited by the dissent are distinguishable or inapposite. See Patrick, 668 F.3d at 1332. Pottgieser v. Kizer, 906 F.2d 1319 (9th Cir.1990), did not involve a plain-meaning interpretation or an interpretation for which there was no policy justification. Bates v. Nicholson, 20 Vet.App. 185 (2006), involved a decision that was exceptional and not easy to predict. Southern Oregon Citizens Against Toxic Sprays v. Watt, 556 F.Supp. 155 (D.Ore.1983), involved a regulation that was straightforward but required exceptional analysis, and the only earlier case interpreting the regulation supported the Government's position. Saysana v. Gillen, 614 F.3d 1 (1st Cir.2010), involved a novel issue. United States v. Yoffe, 775 F.2d 447 (1st Cir. 1985), involved a novel issue and difficulty in foreseeing how the regulation would be interpreted by a court, and White v. Nicholson, 412 F.3d 1314 (Fed.Cir.2005), involved a case of first impression with no prior adverse reaction to the regulation in question. In contrast to the aforementioned cases, the decision in Johnson II both (1) relied on the plain meaning while noting the absence of policy support and (2) was unexceptional and wholly unsurprising given the split in Johnson I.