**Marvin O. JOHNSON, Appellant,**

v.

**Robert A. McDONALD, Secretary of Veterans Affairs, Appellee.**

No. 10–1785(E).

United States Court of Appeals for Veterans Claims.

Argued Sept. 22, 2015.

Decided July 5, 2016.

U.S.C. § 2412(d)(2)(F) to award reasonable attorney fees and expenses. Mr. Johnson filed his EAJA application within the 30–day period set forth in 28 U.S.C. § 2412(d)(1)(B), and his application satisfies that section's content requirements. *See Scarborough v. Principi,* 541 U.S. 401, 408, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004). The Secretary filed a response in which he does not contest that Mr. Johnson is a prevailing party but argues that the Secretary's position was substantially justified. Mr. Johnson filed a reply to the Secretary's response. This case was submitted for en banc review in July 2015, and oral argument was held on September 22, 2015. For the reasons stated below, the EAJA application will be granted in the amount of $27,088.65.

Kenneth M. Carpenter, of Topeka, Kansas, for the appellant.

Jessica M. Schwartz, Appellate Attorney, of Washington, D.C., with whom Leigh A. Bradley, General Counsel; Mary Ann Flynn, Assistant General Counsel; Kenneth A. Walsh, Deputy Assistant General Counsel, all of Washington, D.C., were on the pleading, for the appellee.

Before HAGEL, Chief Judge, and KASOLD, LANCE, DAVIS, SCHOELEN, PIETSCH, BARTLEY, GREENBERG, and MOORMAN,[1] Judges.

HAGEL, Chief Judge:

Veteran Marvin O. Johnson applies through counsel for an award of attorney fees and expenses in the amount of $27,153.25 pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d). The Court has jurisdiction pursuant to 28

## I. BACKGROUND

In May 2010, the Board of Veterans' Appeals (Board) issued a decision denying, inter alia, referral for extraschedular consideration of Mr. Johnson's service-connected right-knee disability and rheumatic heart disease. Mr. Johnson appealed to this Court and, in an en banc decision, a majority of the Court rejected Mr. Johnson's argument that 38 C.F.R. § 3.321(b)(1) requires the Board to consider the collective impact of multiple service-connected disabilities in determinations regarding extraschedular consideration. *Johnson v. Shinseki,* 26 Vet.App. 237, 243–45 (2013) (en banc) (*Johnson I* ), *rev'd sub nom. Johnson v. McDonald,* 762 F.3d 1362 (Fed.Cir.2014) (*Johnson II* ). In doing so, a majority of the Court concluded that § 3.321(b)(1) was ambiguous, deferred to the Secretary's interpretation of the regulation as not requiring the Board to consid-

---

1. Judge Moorman is a recall-eligible judge who has been recalled to further service by the Chief Judge. *See* 38 U.S.C. § 7257(b)(1);

U.S. Vet.App. Misc. Nos. 12–15 (Sept. 1, 2015), 02–16 (Feb. 1, 2016).

er whether a veteran is entitled to referral for extraschedular consideration of his service-connected disabilities on a collective basis, and affirmed the Board's decision. *Johnson I*, 26 Vet.App. at 243–45, 248; *id.* at 248 (Moorman, J., concurring) (giving the Secretary a "high degree of deference").

Mr. Johnson appealed to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit), which reversed this Court's decision and remanded the case for further adjudication. *Johnson II*, 762 F.3d at 1366. The Federal Circuit held that "[t]he plain language of § 3.321(b)(1) provides for referral for extra-schedular consideration based on the collective impact of multiple disabilities" and specifically found "no policy justification for interpreting § 3.321(b)(1) in the way that the [Secretary] advocates." *Id.* at 1365–66. This Court then remanded Mr. Johnson's case to the Board for it to assess the collective impact of his service-connected disabilities in determining whether such impact warranted extraschedular consideration. *Johnson v. McDonald*, No. 10–1785, 2014 WL 6634223, at *1 (U.S.Vet.App. Nov. 24, 2014) (memorandum decision) (*Johnson III*). Mr. Johnson's EAJA application followed.

In his application, Mr. Johnson argues that he is a prevailing party because the remand of his appeal to the Board was predicated on a finding of administrative error, and he alleges that the Secretary's position was not substantially justified. The Secretary does not dispute that Mr. Johnson is a prevailing party, but he does argue that the application should be denied because his position was substantially justified at both the administrative and litigation stages of Mr. Johnson's case.

The Secretary asserts that his position at the administrative stage was substantially justified because his interpretation and application of § 3.321(b)(1) followed his longstanding interpretation of the regulation, as embodied in the instructions in the *VA Adjudication Procedures Manual* (M21–1MR). The Secretary contends that the M21–1MR instructs VA adjudicators to refer claims for extraschedular consideration based on individual disabilities and further asserts that this interpretation previously had not been questioned by the Court, such that his interpretation reflected compliance with then-current law and, therefore, that he was substantially justified pursuant to *Clemmons v. West*, 12 Vet.App. 245 (1999).

In asserting the reasonableness of his position at the litigation stage, the Secretary relies on the same justifications noted above, and additionally notes that a total of seven substantive pleadings addressing the parties' differing interpretations of § 3.321(b)(1) were filed with this Court, which he contends reflects confusion surrounding the language of the regulation; and a majority of the Judges on the Court's en banc panel in *Johnson I* upheld his interpretation of the regulation.

In reply, Mr. Johnson notes that the Board's statement of reasons and bases contains no indication that when it reviewed his disabilities individually the Board considered the instructions set forth in the M21–1MR. Mr. Johnson also contends that, contrary to the Secretary's assertion that confusion surrounds the language of § 3.321(b)(1), the Federal Circuit found the language of the regulation unambiguous, noting that the Secretary " 'cannot manufacture an ambiguity in language where none exists in order to redefine the plain language of a regulation' " and that " 'simply saying something is ambiguous does not make it so.' " Reply at 4–5, 9 (citation omitted) (quoting *Johnson II*, 762 F.3d at 1366).

Mr. Johnson further contends that the Secretary's reliance on his own interpreta-

tion of § 3.321(b)(1) is not a basis for demonstrating substantial justification when the Secretary's interpretation ultimately was a misinterpretation of the plain language of an unambiguous regulation, which provides, and has always provided, that when assessing whether extraschedular consideration is warranted, the Secretary must consider the collective impact of a veteran's service-connected disabilities. Finally, Mr. Johnson contends that, because the Federal Circuit determined that the Secretary's interpretation contravened the plain language of § 3.321(b)(1), this Court's decision in *Johnson I* upholding the Secretary's interpretation of the regulation is not a basis for demonstrating substantial justification.

Mr. Johnson asserts in his supplemental brief that many of this Court's previous decisions on substantial justification failed to properly apply a totality of the circumstances analysis and instead relied on only a few factors. He urges the Court to revisit these cases and clarify the standard. In response, the Secretary reiterates points made in his earlier EAJA brief. He also discusses the cases cited in Mr. Johnson's supplemental brief and asserts that those cases reflect a consideration of various factors that is in accordance with the law. The Secretary additionally argues that Mr. Johnson had only one symptomatic disability, such that a collective-impact discussion would be illogical, and further argues that the Board's failure to explain why the collective impact of Mr. Johnson's disabilities was not considered for extraschedular rating is, at best, a reasons-and-bases error, which is not enough to counter the factors that are favorable to the Secretary.

## II. ANALYSIS

### A. Applicable Law

■ EAJA fees may be awarded when the applicant is a prevailing party

and the Secretary's position was not substantially justified. *See* 28 U.S.C. § 2412(d)(1)(A), (1)(B), (2)(B); *Scarborough,* 541 U.S. at 407–08, 124 S.Ct. 1856; *Owens v. Brown,* 10 Vet.App. 65, 66 (1997). "The appellant has the burden of demonstrating prevailing-party status under the EAJA." *Rollins v. Principi,* 17 Vet.App. 294, 298 (2003). "Prevailing-party status is established either through a merits-stage remand predicated upon the Court's finding of error or a concession of error by the Secretary." *Vahey v. Nicholson,* 20 Vet.App. 208, 211 (2006). A merits-stage remand is predicated upon administrative error when such error is explicitly or implicitly the basis for the remand. *See Davis v. Nicholson,* 475 F.3d 1360, 1364 (Fed.Cir.2007).

■ If prevailing party status is established, the "government has the burden of showing that its position was substantially justified in order to avoid paying the attorney fees and expenses" of the prevailing party. *Olney v. Brown,* 7 Vet.App. 160, 162 (1994). "In order to prevail, the Secretary must show substantial justification for *both* his administrative and litigation positions." *Locher v. Brown,* 9 Vet. App. 535, 537 (1996) (emphasis added). "The government can establish that its position was substantially justified if it demonstrates that it adopted a reasonable, albeit incorrect, interpretation of a particular statute or regulation." *Patrick v. Shinseki,* 668 F.3d 1325, 1330 (Fed.Cir. 2011).

The Federal Circuit has "repeatedly made clear that the substantial justification inquiry requires an analysis of the 'totality of the circumstances' surrounding the government's adoption of a particular position." *Id.* at 1332. Although there is no exhaustive list of relevant factors, this

Court previously outlined the pertinent considerations: "[M]erits, conduct, reasons given, [ ] consistency with judicial precedent and VA policy with respect to such position, and action or failure to act, as reflected in the record on appeal and the filings of the parties before the Court." *Stillwell v. Brown*, 6 Vet.App. 291, 303 (1994).

Moreover, although none of these factors is dispositive, *see id.* at 302 (explaining that substantial justification is not determined by a single-factor approach), the Federal Circuit has explained that, when "the government interprets a statute in a manner that is contrary to its plain language and unsupported by its legislative history, it will prove difficult to establish substantial justification," *Patrick*, 668 F.3d at 1331. Indeed, even "[t]he fact that [this Court] ha[s] previously upheld the [Secretary's] erroneous interpretation of [a statute] does not [ ] resolve the substantial justification inquiry." *Id.* at 1332.

"Once it is determined that a claimant is entitled to an EAJA award, the Court still must determine what is a 'reasonable' fee." *Ussery v. Brown*, 10 Vet.App. 51, 53 (1997); *see also* 28 U.S.C. § 2412(d)(2)(A) (Court must determine what amount constitutes reasonable attorney fees); *McDonald v. Nicholson*, 21 Vet.App. 257, 263–64 (2007) ("In determining reasonableness, the Court will consider whether the hours claimed are (1) unreasonable on their face; (2) otherwise contraindicated by the factors for determining reasonableness itemized in *Hensley* [*v. Eckerhart* ], 461 U.S. [424, 430 n. 3, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ], or *Ussery*[, 10 Vet. App. at 53]; or (3) persuasively opposed by the Secretary."); *Chesser v. West*, 11 Vet. App. 497, 501 (1998) ("The Court has wide discretion in the award of attorney fees under the EAJA.").

## B.  Prevailing Party Status

■ The record supports the parties' agreement that Mr. Johnson is a prevailing party because he ultimately secured a merits-stage remand predicated upon a Court finding of administrative error in the Secretary's interpretation and application of § 3.321(b)(1). *Johnson III*, 2014 WL 6634223, at *1; *see also Davis*, 475 F.3d at 1364; *Vahey*, 20 Vet.App. at 211.

## C.  Substantial Justification

### 1.  *Administrative Position*

■ The Secretary contends that his position at the administrative stage was substantially justified in part because he has consistently and long applied his erroneous interpretation of § 3.321(b)(1). This contention, however, is baldly presented and belied by the fact that, at the merits stage of this case, the Secretary acknowledged that prior Board decisions might be contrary to this interpretation, *see* Appellee's June 15, 2012, Memorandum of Law at 8, *Johnson I*, 26 Vet.App. 237 (No. 10–1785); and was otherwise unable to confirm a consistent VA practice regarding his interpretation of § 3.321(b)(1). Moreover, the Secretary's argument of a consistent and longstanding interpretation finds little support in the majority decision in *Johnson I*, which was predicated on the majority's view that the regulation was ambiguous—a view subsequently rejected by the Federal Circuit—and deference to the Secretary's proffered interpretation, without the majority finding that it was longstanding or consistently applied. *See Johnson I*, 26 Vet.App. at 243–44 (majority opinion).

The Secretary also cannot find support in the fact that, prior to *Johnson I*, the Court had not issued a precedential decision on the Secretary's interpretation of § 3.321(b)(1). Silence is neither an indication that the Secretary was correct nor a

tacit approval of the Secretary's interpretation. *Cf. Carpenter v. Principi,* 15 Vet. App. 64, 70 (2001) (noting that "the Court's silence on the reasonableness of a fee agreement cannot be said to be an implicit holding that the agreement was, in fact, reasonable").

Additionally, the Secretary's contention that his erroneous interpretation of § 3.321(b)(1) is embodied in the M21–1MR is a far stretch from the manual's actual wording. Indeed, during oral argument, the Secretary was unable to point to language in the M21–1MR that restricts referrals for extraschedular consideration to disabilities on an individual basis. Oral Argument at 29:23–31:18, *Johnson v. McDonald,* U.S. Vet.App. No. 10–1785(E) (oral argument held Sept. 22, 2015), http://www.uscourts.cavc.gov/oral_arguments_audio.php. Moreover, although the M21–1MR directs referral for extraschedular consideration when the rating schedule is inadequate to rate an individual disability, it does not preclude referral for extraschedular consideration based on the veteran's collective disabilities. *See* M21–1MR, pt. III, subpt. iv, § 6.B(10)(a) (directing rating officials to consider possible entitlement "due to disability" and providing no indication that "disability" is limited to an individual disability, which would be the case if "a disability" had been used instead of "disability").

Similarly unavailing are the Secretary's related contentions that his interpretation was substantially justified because he was relying on then-current law and that *Clemmons,* 12 Vet.App. at 245, stands for the proposition that reliance on then-current law means a position is substantially justified. As to the Secretary's first contention, he does not establish that he was relying on then-current law or that then-current law required a disability-by-disability analysis; indeed, simply stating

that the Board applied then-current law does not make it so. *Cf. Johnson II,* 762 F.3d at 1366 (" '[S]imply saying something is ambiguous does not make it so.' " (quoting *Johnson I,* 26 Vet.App. at 254)). Here, the Board never addressed the scope of § 3.321(b) and instead applied the regulation in a manner wholly contrary to the plain wording of the regulation.

As to the second contention, to the extent that *Clemmons* ever stood for the proposition that the Secretary was always substantially justified because he was following current law, it is no longer valid; succinctly stated, no one factor establishes substantial justification—it is predicated on the totality of the circumstances. *See Patrick,* 668 F.3d at 1332 ("The fact that the Veterans Court had previously upheld the VA's erroneous interpretation of [a statute] does not ... resolve the substantial justification inquiry."). Moreover, unlike the appellant's claim in *Clemmons,* Mr. Johnson's claim was decided by the Board when there was no precedential caselaw supporting the Secretary's view and the only caselaw explicitly addressing the scope of § 3.321(b)(1) was Judge Steinberg's concurrence in *Brambley v. Principi,* which proffered an interpretation of the regulation directly contrary to the Secretary's position. *See* 17 Vet.App. 20, 26 (2003) (Steinberg, J., concurring).

Nor does the record support the Secretary's contention that the Board was substantially justified in not addressing all Mr. Johnson's disabilities because only his right-knee disability was symptomatic. The Board remanded Mr. Johnson's left-knee disability claim for consideration of medical records, addressing the severity of that disability, that were not previously considered and also remanded the issue of entitlement to a total disability rating based on individual unemployability because such entitlement is predicated on a

veteran's complete disability picture. Record at 22. Additionally, the Federal Circuit noted that the Board had "denied Mr. Johnson's claim for extra-schedular consideration of the combined impact of his service-connected rheumatic heart disease and right knee disability." *Johnson II*, 762 F.3d at 1363. Succinctly stated, the Board's decision suggests that collective impact was either argued or reasonably raised by the record, *see Robinson v. Peake*, 21 Vet.App. 545, 552–54 (2008) (requiring the Board to "consider all issues either raised by the claimant or by the evidence of record"), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed.Cir. 2009), and the Secretary fails to demonstrate otherwise, *see Olney*, 7 Vet.App. at 162.

Finally, we note that the Secretary's arguments in support of his interpretation were soundly rejected by the Federal Circuit which, as noted above, found the Secretary's interpretation of § 3.321(b)(1) contrary to the regulation's plain language and inconsistent with the regulation's purpose, and found "no policy justification for interpreting § 3.321(b)(1) in the way that the [Secretary] advocate[ed]." *Johnson II*, 762 F.3d at 1365–66.

In sum, as discussed above, we find little, if any, persuasive value in the factors set forth by the Secretary in support of his argument that he was substantially justified in his interpretation and application of § 3.321(b)(1). Indeed, the factors he presents do not overcome the significant hurdle imposed by the fact that the Board's interpretation and application of § 3.321(b)(1) were contrary to the plain language of that regulation and without policy support. *See Patrick*, 668 F.3d at 1331. After considering the factors set forth by the Secretary, we hold that the Secretary has not met his burden of demonstrating that his position at the administrative stage was substantially justified based on the totality of the circumstances. *See id.* at 1332; *Olney*, 7 Vet.App. at 162.

### 2. Litigation Position

Because the Secretary has not met his burden of demonstrating that he was substantially justified in his interpretation and application of § 3.321(b)(1) at the administrative stage, we need not address whether he was substantially justified at the litigation stage. *See Cycholl v. Principi*, 15 Vet.App. 355, 361 (2001) (the Court need not address the Secretary's position at the litigation stage where the Secretary failed to carry his burden of demonstrating that his position was substantially justified at the administrative stage).

### D. Fee Award

Although the Secretary does not contest the reasonableness of the fees claimed, they may be awarded only if reasonable, and Mr. Johnson has the burden of demonstrating their reasonableness. *See* 28 U.S.C. § 2412(d) (Court must determine what amounts constitute reasonable attorney fees); *Ussery*, 10 Vet.App. at 53; *Penny v. Brown*, 7 Vet.App. 348, 352 (1995) (holding that only reasonable and necessary expenses that are customarily charged to a client may be awarded under EAJA). Here, Mr. Johnson's EAJA application states that one attorney provided 30.9 hours of work, but the itemized statement of fees and expenses reflects only 30.52 hours. Accordingly only 30.52 hours will be awarded. *See Perry v. West*, 11 Vet.App. 319, 329 (1998); *McDonald*, 21 Vet.App. at 263–64.

The remainder of the EAJA application appears reasonable on its face and will be awarded. In sum, of the $27,153.25 Mr. Johnson requested, the Court will award $27,088.65.

**144**

## III. CONCLUSION

Upon consideration of the foregoing, Mr. Johnson's EAJA application is GRANTED in the amount of $27,088.65.

HAGEL, Chief Judge, filed the opinion of the Court, in which DAVIS, SCHOELEN, and GREENBERG, Judges, joined, and in which KASOLD, Judge, joined as to Parts I and II A–C.

KASOLD, Judge, filed an opinion concurring in part and dissenting in part.

BARTLEY, Judge, filed a dissenting opinion in which LANCE, PIETSCH, and MOORMAN, Judges, joined.

KASOLD, Judge, separate statement:

I concur that Mr. Johnson was a prevailing party and that the Secretary was not substantially justified during the administrative processing of Mr. Johnson's claim. In support of that decision, I note that although our precedential caselaw may not have explicitly addressed the full scope of

the Secretary's regulation on extraschedular consideration, a fair reading of our caselaw would have cautioned the Secretary against any attempt to inexplicably ignore the plain wording of his regulation. Not only did Judge Steinberg's concurrence in *Brambley v. Principi* proffer an interpretation of the regulation directly contrary to the Secretary's position, but the majority in that case also implicitly agreed with Judge Steinberg when they stated that extraschedular consideration and TDIU each "require a complete picture of the appellant's service-connected disabilities and their effect on [ ] employability." 17 Vet.App. 20, 24 (2003); *id.* at 26 (Steinberg, J., concurring). Moreover, that view of the Secretary's regulation was not rejected by the Court until *Johnson I,* which was reversed by *Johnson II.*[2]

As to the EAJA fees and expenses, although four of my colleagues would award $27,088.65, (while four others would award nothing), I note that the EAJA application

---

**2.** I note that our colleagues in disagreement with the determination that the Secretary was not substantially justified during the administrative processing of Mr. Johnson's claim raise numerous issues—i.e., (1) *Johnson I's* split en-banc decision suggests reasonableness, (2) a plain language determination is not dispositive, (3) the majority misapplies dicta from *Patrick,* and (4) the majority relies on one factor (the *Johnson II* merits determination), which are not specifically addressed in the opinion determining that the Secretary was not substantially justified during the administrative processing of Mr. Johnson's claim. I further note, however, that these issues were also raised in the dissenting statements, and rebutted by a majority of the Court, in the recently issued decision in *Butts v. McDonald,* 28 Vet.App. 74 (2016). The rationale stated in *Butts* for rejecting the dissenting views on these issues is equally applicable in this case.

I further note that our colleagues in disagreement state that regulatory history concerning extraschedular consideration is murky and they support this statement by

quoting my separate statement in *Johnson I* where I stated that a 1930 rule, which the Secretary contended formed the basis for the extraschedular regulation, was unclear. This selective quotation, however, fails to acknowledge the subsequent portions of my *Johnson I* separate statement explaining how later changes resolved any ambiguity. *See Johnson I,* 26 Vet.App. at 257–59 (Kasold, C.J., dissenting) (noting that the 1934 regulation, the 1936 VA version of VA Rules and Procedures, a 1945 VA rule, and a 1960 interim regulation all indicated that extraschedular could be premised on multiple disabilities and further explaining that "[b]ly 1961 ... any ambiguity present in the earlier VA rules is gone"). Otherwise stated, my separate statement in *Johnson I* does not support the proposition that the regulatory history is or was murky. *See id.* at 259 ("In sum, the regulation's promulgating history supports the plain language of the regulation that the USB and Director have been delegated broad authority to award an extraschedular disability rating based on the total disability picture of the veteran.").

requests reimbursement for almost two, ten-hour days, spent on the underlying merits reply brief, which is more hours than requested for the merits brief. Because a reply brief is meant to be a narrow, responsive pleading, the time spent on the reply brief here appears excessive on its face; moreover, Mr. Johnson fails to demonstrate otherwise. *See Kiddey v. Shinseki*, 22 Vet.App. 367, 373 (2009) ("The appellant has the burden of demonstrating that the fees requested are reasonable."). Based on the work product and issues discussed, only 10 hours appear reasonable, such that only $25,362.88 is appropriate and therefore it is the amount actually granted by the Court. *See* 28 U.S.C. § 2412 (permitting the Court to award *reasonable* attorney fees); *see also Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) ("[W]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds ....'" (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976))).

BARTLEY, Judge, with whom LANCE, PIETSCH, and MOORMAN, Judges, join, dissenting:

Because the majority fails to apply the appropriate analysis for substantial justification under EAJA—whether, considering the totality of the circumstances, the Agency's litigation and agency positions were reasonable at the time those positions were taken—I dissent. Although the majority cites the totality of the circumstances standard, in substance the majority focuses on one factor, the Federal Circuit's merits determination in *Johnson v. McDonald* (*Johnson II*), 762 F.3d 1362 (Fed.Cir.2014), without considering all of the pertinent factors surrounding the government's conduct. This approach represents the application of an erroneous legal test. As described below, because in this case the Secretary applied an incorrect but still reasonable interpretation of his own regulation in a close case of first impression, I would hold that the Secretary has met his burden of establishing substantial justification and deny EAJA fees.

## I. APPLICABLE LAW

### A. Principles of Substantial Justification Under EAJA

"[T]he substantial justification inquiry requires an analysis of the 'totality of the circumstances' surrounding the government's adoption of a particular position." *Patrick v. Shinseki*, 668 F.3d 1325, 1332 (Fed.Cir.2011) (quoting *Smith v. Principi*, 343 F.3d 1358, 1362 (Fed.Cir.2003)); *see Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir.1993); Secretary's Response to EAJA Application at 10–11. "The standard to be applied ... for the issue of substantial justification is one of reasonableness...." *Essex Electro Eng'rs, Inc. v. United States*, 757 F.2d 247, 252 (Fed.Cir.1985); *see Cline v. Shinseki*, 26 Vet.App. 325, 326 (2013) (This "inquiry is designed to evaluate the reasonableness of 'the position taken by the government on the issue on which the claimant prevailed.'"). "The totality of the circumstances, by its very description, does not exclude any valid issue from consideration." *White v. Nicholson*, 412 F.3d 1314, 1317 (Fed.Cir.2005). "[A] position can be justified even though it is not correct, and ... it can be substantially (*i.e.*, for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 566 n. 2, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). "Put

another way, substantially justified means there is a dispute over which reasonable minds could differ." *Norris v. S.E.C.*, 695 F.3d 1261, 1265 (Fed.Cir.2012). "Substantially justified" does not mean "justified to a high degree," but rather means " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Underwood*, 487 U.S. at 565, 108 S.Ct. 2541.

Courts do not ask whether correct Government positions were substantially justified. *See, e.g., Patrick*, 668 F.3d at 1330 (substantial justification involves asking whether the Government "adopted a reasonable, albeit incorrect, interpretation of a particular statute or regulation"). Therefore, it is obvious that "[t]he Secretary's failure to prevail on the merits of the case does not raise a presumption that his position was not substantially justified." *Bates v. Nicholson*, 20 Vet.App. 185, 191 (2006); *see also Pottgieser v. Kizer*, 906 F.2d 1319, 1324 (9th Cir.1990) ("Failure to prevail does not raise a presumption that the government's position was unreasonable."); *United States v. Yoffe*, 775 F.2d 447, 450 (1st Cir.1985) ("Since fees are awarded only to a prevailing party, it follows that the fact that the government lost does not create a presumption that its position was not substantially justified."). The Supreme Court has stated that "the fact that one court agreed or disagreed with the Government does not establish whether or not its position is substantially justified." *Underwood*, 487 U.S. at 565, 108 S.Ct. 2541.

Moreover, no matter how strongly worded a court opinion invalidating a Government position on the merits may be, a subsequent court reviewing an EAJA application as to that position may not simply cite the merits opinion as proof that the position was not substantially justified, but must itself conduct an independent analysis to determine whether the Government's position, at the time that position was taken, was "justified to a degree that could satisfy a reasonable person." *Id.; see Gonzales v. Free Speech Coalition*, 408 F.3d 613, 620 (9th Cir.2005) (reversing District Court's EAJA award that relied on the "clarity of the" Supreme Court's merits determination because, "[t]o be sure, the Supreme Court soundly rejected the government's arguments. But ... [b]y putting undue weight on the Supreme Court's holding on the merits, the district court seemed to rely on hindsight, rather than an assessment of the reasonableness of the government's position *at the time of the litigation*" (emphasis in original)); *Taucher v. Brown–Hruska*, 396 F.3d 1168, 1173 (D.C.Cir.2005) ("In considering substantial justification under EAJA, ... as in other areas[,] courts need to guard against being subtly influenced by the familiar shortcomings of hindsight judgment."). Accordingly, unlike prevailing party status, which simply asks whether the Government lost, substantial justification asks a more nuanced question: even though the Government lost, at the time it made the decision under appeal, was it reasonable in the attempt? *See Roanoke River Basin Ass'n*, 991 F.2d at 139 ("The focus when determining whether a petitioner is a prevailing party is aimed at the degree of success obtained by the petitioner. Whether the government's 'position in the litigation' is substantially justified, in contrast, focuses, not the on the government's success or failure, but on the reasonableness of its position in bringing about or continuing the litigation.").

Against this backdrop, this Court has identified several important factors to consider in the totality of the circumstances, "including merits, conduct, reasons given, and consistency with judicial precedent and VA policy with respect to such position, and action or failure to act, as re-

flected in the record on appeal." *Stillwell v. Brown,* 6 Vet.App. 291, 302 (1994); *see also Cline,* 26 Vet.App. at 327–32 (discussing and applying the *Stillwell* factors). The Court in *Stillwell* further recognized:

> Two special circumstances may also have a bearing upon the reasonableness of the litigation position of ... VA, and of the action or inaction by ... VA at the administrative level. One is the evolution of VA benefits law since the creation of this Court that has often resulted in new, different, or more stringent requirements for adjudication. The second is that some cases before this Court are ones of first impression involving good[-]faith arguments of the government that are eventually rejected by the Court.

6 Vet.App. at 303. The Court also noted that the Board's decision may issue at a time when "the statutory and regulatory framework presents a 'confusing tapestry,' ... in which the meaning is not easily discerned." *Id.; see Meinhold v. U.S. Dep't of Def.,* 123 F.3d 1275, 1278 (9th Cir.1997) ("Consequently it is not fair to conclude that every violation of a regulation by an agency stamps its position as unreasonable. The government may avoid EAJA fees if it can prove that the regulation it violated was ambiguous, complex, or required exceptional analysis."). To determine whether the Secretary is substantially justified, the Court must "consider the applicable *Stillwell* factors, as well as any other circumstances that may apply." *Cline,* 26 Vet.App. at 327.

The Federal Circuit has held that "substantial justification is measured, not against the case law existing at the time the EAJA motion is decided, but rather, against the case law that was prevailing at the time the government adopted its position." *Bowey v. West,* 218 F.3d 1373, 1377 (Fed.Cir.2000); *see Owen v. United States,* 861 F.2d 1273, 1275 (Fed.Cir.1988) (en banc) (finding that "the position of the government was substantially justified when it was taken, based on precedents then standing"); *(Leamon) Johnson v. Principi,* 17 Vet.App. 436, 442 (2004) ("As to VA's application of the revised regulation in the instant case, the Court cannot find that the Secretary's position at the administrative level was not substantially justified because 'the Board clearly relied upon then-current law.'" (citation omitted)); *see also Gonzales,* 408 F.3d at 620 (EAJA requires an assessment of the "reasonableness of the government's position *at the time of the* [Government action in question]" (emphasis in original)).

Although no single issue is dispositive, courts are more likely to find that the Government's position was substantially justified where that position was invalidated in a case of first impression. *See White,* 412 F.3d at 1316–17 (affirming this Court's finding of substantial justification where case invalidating regulation that Board had relied on in adjudicating EAJA applicant's case was "a case of first impression and [there had been] no prior adverse reaction" to the regulation); *Ozer v. Principi,* 16 Vet.App. 475, 479 (2002) (finding the Secretary's position substantially justified where, inter alia, the "case was one of first impression" and "there was no prior disapproval of or challenge to the [Secretary's interpretation]"); *Felton v. Brown,* 7 Vet.App. 276, 283 (1994) (finding the Secretary's position in a case of first impression substantially justified "[g]iven the statutory silence on the particular matter and the lack of a conflict with adverse precedent"); *see also Cody v. Caterisano,* 631 F.3d 136, 142 (4th Cir.2011) ("As the Government notes, litigating cases of first impression is generally justifiable.").

This is not to suggest that the lack of previous challenge to an erroneous government position will always render the government immune from EAJA fees; rather, "whether a case is one of first impression is only one factor for the Court to consider." *Felton*, 7 Vet.App. at 283. This factor furthers the commonsense principle that "[f]or purposes of the EAJA, the more clearly established are the governing norms, and the more clearly they dictate the result in favor of the private litigant, the less 'justified' it is for the government to pursue or persist in litigation." *Martinez v. Sec'y of Health & Human Servs.*, 815 F.2d 1381, 1383 (10th Cir.1987) (citation omitted). Thus, the cases construing EAJA recognize a balance between encouraging the vindication of rights by "creating a limited exception to the 'American Rule' against awarding attorneys fees to prevailing parties," *Underwood*, 487 U.S. at 575, 108 S.Ct. 2541 (Brennan, J., concurring in part and concurring in the judgment), and not discouraging Government agencies from attempting to safeguard taxpayer money by choosing to advance positions they reasonably believe are correct at the time, *see Roanoke River Basin Ass'n*, 991 F.2d at 139 ("While the EAJA redresses governmental abuse, it was never intended to chill the government's right to litigate or to subject the public fisc to added risk of loss when the government chooses to litigate reasonably substantiated positions, whether or not the position later turns out to be wrong.").

B. The Secretary's Arguments and the Totality of the Circumstances

The Secretary advances several reasons why his conduct was substantially justified at both the administrative and litigation phases. He argues that the Board followed what was at the time of its decision the current state of the law, relied upon VA's longstanding interpretation of § 3.321(b)(1), relied on agency guidance set forth in the Secretary's Manual M21–1MR, which instructs adjudicators to refer claims for extraschedular consideration if "the schedular evaluations are considered to be inadequate for an individual disability," and did not have the benefit of the Federal Circuit's *Johnson II* decision. Secretary's Response to EAJA Application at 6–8. The Secretary also argues that, at the litigation phase, the Secretary elucidated these factors and consistently asserted that the regulation had long been applied to disabilities singly, that the regulation was ambiguous, and that the Court should defer to the Secretary's interpretation of the regulation. *Id.* at 6–9. Moreover, he argues that the parties submitted seven substantive pleadings before this Court addressing the parties' differing interpretations, that after en banc review in this Court we upheld his interpretation, and that the Federal Circuit's deciding of the case on plain language rather than using other tools of regulatory construction is not a bar to establishing substantial justification. *Id.* at 9–10 (citing cases), 12. He asserts in addition that this case is distinguishable from *Patrick*, where the Federal Circuit based its decision on this Court's failure to consider the "totality of the circumstances" and found the Secretary's position contrary to the plain language of the statute, the legislative history, VA's own precedent opinion, and the Federal Circuit's opinions on the issue. *Id.* at 11 (quoting *Patrick*, 668 F.3d at 1331). Finally, he argues that this case concerns a regulation that has been held to be confusing and in need of reform, a factor the Secretary considered when choosing to litigate the issue of whether the regulation was ambiguous. *Id.*

Further, because we must analyze the totality of the circumstances, not just some of the circumstances, we are not limited to those factors specifically identified by

counsel. *See Cline,* 26 Vet.App. at 327 (Court must consider the *Stillwell* factors, "as well as any other circumstances that may apply"); *Felton,* 7 Vet.App. at 286 ("[W]e do not limit our examination of [substantial justification] to a vacuum surrounded by only the four corners of the pleadings and the underlying opinion by the Court.... [T]he Secretary argued that VA's position has always been substantially justified, and the Court has merely put that argument to the test."); *see also Patrick,* 668 F.3d at 1332 ("We have repeatedly made clear that the substantial justification inquiry requires an analysis of the 'totality of the circumstances' surrounding the government's adoption of a particular position."); *White,* 412 F.3d at 1317 (substantial justification analysis "does not exclude any valid issue from consideration").

## II.  ANALYSIS

### A.  Administrative Phase

I agree with the majority that substantial justification must be measured at both the administrative and litigation phases. *See Locher v. Brown,* 9 Vet.App. 535, 537 (1996). Looking at the totality of the circumstances, including but not limited to the circumstances specifically identified by counsel, there are strong arguments for finding substantial justification at both phases. In adjudicating the issue of extraschedular consideration, the Board cited *Thun v. Peake,* 22 Vet.App. 111 (2008), which states: "The governing norm for extraschedular consideration is a finding that the evidence presents such an exceptional disability picture that the available schedular evaluations for the service-con-

nected disability at issue are inadequate." *Thun v. Peake,* 22 Vet.App. 111, 115 (2008) (citing M21–1MR, pt. III, subpt. iv, ch. 6, sec. B.5.c). Moreover, at the time of the May 2010 Board decision in this case, as the majority notes, there was "silence" in the precedential opinions of this Court as to whether § 3.321(b)(1) could be applied to multiple disabilities collectively or only to disabilities individually.[3] Accordingly, although the Federal Circuit ultimately invalidated the Secretary's interpretation of § 3.321(b)(1), that action was taken in a "case of first impression," *see White,* 412 F.3d at 1316–17; *(Leamon) Johnson,* 17 Vet.App. at 442; *Felton,* 7 Vet.App. at 283. This factor weighs in favor of substantial justification in this case.

In both *White* and *(Leamon) Johnson,* the Board in the underlying appeals relied on then-current regulation 38 C.F.R. § 19.9(a)(2), but in the subsequently decided *Disabled American Veterans (DAV) v. Secretary of Veterans Affairs,* 327 F.3d 1339 (Fed.Cir.2003), a "case of first impression," the Federal Circuit found that regulation inconsistent with 38 U.S.C. § 7104(a) and invalidated it. *See White,* 412 F.3d at 1315. Both cases were remanded after *DAV* was decided, and in the EAJA phases of both *White* and *(Leamon) Johnson,* the Federal Circuit and this Court, respectively, held that the Secretary's actions were substantially justified, under "the totality of the circumstances," because "*DAV v. Sec'y* was a case of first impression and there had been no prior adverse reaction to" the now-invalidated regulation. *(Leamon) Johnson,* 17 Vet. App. at 442; *see also White,* 412 F.3d at 1316–17. Similarly, here, this Court's (and

---

**3.** Although the majority notes Judge Steinberg's concurrence in *Brambley v. Principi,* 17 Vet.App. 20 (2003), his view that extraschedular consideration should be conducted on a collective basis was not shared by the majority in *Brambley, see Maryland v. Wilson,* 519 U.S. 408, 412–13, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) (noting that statements in concurring opinions do not constitute binding precedent), and the Court never adopted that view in the subsequent 11 years of jurisprudence leading up to *Johnson II.*

the Federal Circuit's) silence on the issue meant that at the time of Mr. Johnson's May 2010 Board decision, there had been no adverse reaction to the method of adjudicating the issue of extraschedular consideration that the Board employed.

### B.   Litigation Phase

#### 1.   *Secretary's Interpretation of His Own Regulation*

At the litigation phase, the Secretary offered cogent reasons for the Board's application of § 3.321(b)(1) that the Federal Circuit did not accept on the merits but that a reasonable person could have found persuasive. *See Underwood,* 487 U.S. at 566 n. 2, 108 S.Ct. 2541; *Stillwell,* 6 Vet. App. at 302 (analyzing "reasons given" for government's position).   Specifically, he argued that the language in the regulation referring to "schedular evaluations" and "disability or disabilities" was ambiguous and could refer to either a combined extraschedular evaluation, as Mr. Johnson contended, or "a recognition that a veteran may receive extraschedular ratings for one or more individual disabilities," as the Government contended.   *Johnson I,* 26 Vet. App. at 243.   The reasons given for the Secretary's position also included that the Secretary was interpreting his own regulation and that that interpretation was entitled to a high degree of deference.   *Id.* (citing, inter alia, *Auer v. Robbins,* 519 U.S. 452, 461–62, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997)).

The fact that the Agency was interpreting its own regulation, and not a statute, has a direct bearing on how reasonable its position was.   Interpreting the language of his own regulation, the Secretary would know that his interpretation would be accepted unless that interpretation were contrary to the regulation's plain meaning.

*See Thun v. Shinseki,* 572 F.3d 1366, 1369 (Fed.Cir.2009); *see also Decker v. N.W. Envntl. Def. Ctr.,* 568 U.S. 597, 133 S.Ct. 1326, 1337, 185 L.Ed.2d 447 (2013) ("It is well established that an agency's interpretation need not be the only possible reading of a regulation—or even the best one—to prevail.   When an agency interprets its own regulation, the Court, as a general rule, defers to it 'unless that interpretation is "plainly erroneous or inconsistent with the regulation." ' " (quoting *Auer,* 519 U.S. at 461, 117 S.Ct. 905) (other internal citation omitted)); *Martin v. Occupational Safety and Health Review Comm'n,* 499 U.S. 144, 151, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991).   However, if he were interpreting a statute, he would know that, even if his interpretation were not contrary to the statute's plain meaning, and the Court agreed with him that the statute was ambiguous, he would still have to demonstrate the overall persuasiveness of his position. *See Wanless v. Shinseki,* 618 F.3d 1333, 1338 (Fed.Cir.2010) (Secretary's interpretation of statutory language is entitled to deference "only in so far as it has the 'power to persuade' " (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944))).   Accordingly, the Secretary was on stronger footing proposing an interpretation of his own regulation than he would have been if he were proposing the same interpretation of a statute.   *See Decker,* 133 S.Ct. at 1337; *Skidmore,* 323 U.S. at 140, 65 S.Ct. 161; *Saysana v. Gillen,* 614 F.3d 1, 4 (1st Cir. 2010) (holding the Government's choice to litigate "the question of whether [a provision] was ambiguous, and therefore whether courts had to defer to a reasonable administrative interpretation of [that provision]" was itself reasonable).[4]

---

**4.**   The Federal Circuit noted in passing that Mr. Johnson's interpretation of § 3.321(b)(1)

was "consistent with" 38 U.S.C. § 1155. However, the Federal Circuit expressed no

### 2. Consistency with Regulatory Scheme

The reasons given also included that the Secretary, rather than proposing his interpretation for the first time in litigation, had long construed the regulation to mean that a veteran was entitled to extraschedular consideration on a disability-by-disability basis and had recorded that construction in his *Adjudication Procedures Manual. Johnson I*, 26 Vet.App. at 243–44 (citing VA ADJUDICATION PROCEDURES MANUAL M21–1MR, pt. II, subpt. iv, ch. 6, sec. B.5.c (claims are to be submitted for extraschedular consideration "if the schedular evaluations are considered inadequate for an individual disability")). *See Stillwell*, 6 Vet.App. at 302 (identifying "consistency with ... VA policy with respect to such position" as factor weighing in favor of substantial justification); *cf. Salmi v. Sec'y of HHS*, 712 F.Supp. 566, 569–70 (W.D.Mich.1989) (no substantial justification where Secretary "fail[ed] to apply *his own* long-standing de minimus construction of the severity requirement" (emphasis in original)). The reasons given included the Secretary's argument that this Court in *Thun v. Peake* cited with approval the Manual M21–1MR provision stating that claims be submitted for extraschedular consideration if the rating schedule is inadequate "for an individual disability" and that the Court noted that the analysis must begin with "a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability." *Johnson I*, No. 10–1785, Appellee's Memorandum of Law Responding to Court Order dated May 16, 2012 (Appellee's June 2012 Memorandum), at 10, 12 (Jun. 15, 2012) (quoting *Thun*, 22 Vet.App. at 115). The Secretary argued, moreover, that the Federal Circuit, in affirming this Court's *Thun* decision, deferred to VA's interpretation of § 3.321(b)(1) as set forth in the M21–1MR. *Id.* at 15 (quoting *Thun v. Shinseki*, 572 F.3d 1366, 1369 (2009)).[5]

The reasons given further included practical considerations that took into account the provision's place in the regulatory scheme. In particular, the Secretary argued that the VA rating schedule assigns disability evaluations based on the impact of individual disabilities, not collective disabilities; and, thus, "it is unworkable for VA to compare a Veteran's disabilities collectively to the criteria of an individual disability in the rating schedule to determine whether the rating schedule is adequate and extraschedular consideration is warranted." Appellee's June 2012 Memorandum at 10. Additionally, § 3.321(b)(3)

---

opinion about whether the Secretary's contrary reading of § 3.321(b)(1) was also reasonable in light of the statute. *See Cody*, 631 F.3d at 144 ("[B]oth the [EAJA] order and the record reflect that the district court considered the arguments of both parties to be reasonable. We agree. In this case of first impression, the Government made reasonable arguments based on statutory interpretation and analogous cases.").

5. The majority ignores language from the M21–1MR stating that extraschedular evaluations will be performed for "an individual disability" but cites a different section of the Manual and holds against the Secretary that this different section *does not* discuss extraschedular evaluation of "a disability" but instead discusses extraschedular evaluation "due to disability." *Ante* at 142. The majority concedes that the Secretary's manual would provide evidence that extraschedular consideration was intended to be limited to an individual disability if the indefinite article had been used prior to the word "disability"— which is precisely the language the Secretary did use and precisely the language in place at the time of the Board decision in this case. *See Thun*, 572 F.3d at 1369 (quoting "an individual disability" language from manual as of 2009).

states that effective dates for extraschedular evaluations will be determined in accordance with 38 C.F.R. § 3.400, and § 3.400 describes how to provide an effective date for an individual claim only, not collective claims. *Id.* at 6.

Moreover, the Secretary represented, and this Court has no cause to doubt, that "a sampling of Board decisions demonstrates that the Board generally follows VA's long-standing interpretation" of the regulation to require individualized extraschedular consideration. *Id.* at 8; *see Fed. Express Corp. v. Holowecki,* 552 U.S. 389, 399–400, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008) (judicial deference was due to the Equal Employment Opportunity Commission's (EEOC's) "interpretive statement, embodied in the compliance manual and memoranda, [which] has been binding on EEOC staff for at least five years" even though, "as the Government concedes, the agency's implementation of this policy has been uneven").[6]

### 3. This Court Upholds the Secretary's Approach

Five out of eight Judges on this Court deemed the Secretary's interpretation reasonable. *See Johnson I,* 26 Vet.App. at 244 (noting, inter alia, that the Secretary was interpreting his own regulation and that "the VA disability rating schedule is designed to consider the disabling effect of disabilities separately"). Although the majority points out that this Court's agreement with the Secretary's interpretation does not "resolve the substantial justification inquiry," *ante* at 141 (citing *Patrick,* 668 F.3d at 1332), that fact is both obvious

and a red herring. Of course this Court's merits determination does not "resolve" the question of whether the Government was substantially justified; however, neither does the Federal Circuit's merits determination. Neither court adjudicated the issue of whether the Government's position was substantially justified, and neither court was asked. *See Felton,* 7 Vet. App. at 286 ("Indeed, our underlying decision on the merits addressed an altogether different question: whether the regulation at issue was valid rather than whether the steps that led to VA's promulgation of the regulation (i.e., the prelitigation conduct) was substantially justified."); *see also Toro Co. v. White Consol. Indus., Inc.,* 383 F.3d 1326, 1335 (Fed.Cir.2004) (only "issues that were actually decided, . . . in the earlier litigation" represent the law of the case); *Grantham v. Brown,* 114 F.3d 1156, 1158 (Fed.Cir.1997) ("It is axiomatic that the language in [any case] must be read in light of the facts and issues that were before the court when the language was written."); *Young v. Shinseki,* 25 Vet.App. 201, 204 (2012) (en banc) (issue preclusion requires that (1) the issues previously adjudicated were "identical to" those before the current tribunal; (2) the issues were "actually litigated" in the prior proceeding; (3) the prior tribunal's resolution of those issues was "necessary to the resulting judgment"; and (4) the litigant was fully represented in the prior proceeding).

Nor would it resolve the reasonableness inquiry if the Supreme Court unanimously reversed the Federal Circuit's merits determination tomorrow. The Supreme

---

**6.** Although the majority contends that the Secretary's acknowledgment that some Board decisions might have mistakenly made collective extraschedular referral decisions over the years shows that he was "unable to confirm a consistent VA practice regarding his interpretation of § 3.321(b)(1)," *ante* at 141, the majority fails to explain how lack of perfection in

applying the Secretary's interpretation in hundreds of Board decisions over the years demonstrates that the Secretary's interpretation was not longstanding. *See Fed. Express Corp.,* 552 U.S. at 400, 128 S.Ct. 1147 (noting that "[s]ome degree of inconsistent treatment is unavoidable when the agency processes over 175,000 inquiries a year").

Court binds the Federal Circuit as to merits determinations actually reached, just as the Federal Circuit binds this Court, *see Toro,* 383 F.3d at 1335; however, for EAJA substantial justification purposes, that hierarchy of authority does not mean, ipso facto, that disagreements with merits determinations are unreasonable.

However, the fact that this Court agreed with the Secretary's interpretation of § 3.321(b)(1) is evidence in favor of a finding that the case presented "a dispute over which reasonable minds could differ." *Norris,* 695 F.3d at 1265; *League of Women Voters of Calif. v. F.C.C.,* 798 F.2d 1255, 1260 (9th Cir.1986) (denying EAJA fees because, inter alia, "[t]he constitutionality of the amended statute is a question upon which reasonable minds could differ, as evidenced by the five-four division by the Supreme Court"); *Gonzales,* 408 F.3d at 621 (noting differing views of Government's position taken by judges at previous phases and concluding, "[t]hus, 'reasonable minds' could and *did* differ about" the government's position). Moreover, the en banc approval of the Secretary's position by this Court, unique amongst courts as the only court established to hear exclusively appeals from the Board of Veterans' Appeals, is arguably a stronger factor in the Secretary's favor than judicial approval generally. *See* 38 U.S.C. § 7252(a) (giving this Court exclusive jurisdiction over appeals from the Board); *Shinseki v. Sanders,* 556 U.S. 396, 129 S.Ct. 1696, 1707, 173 L.Ed.2d 532 (2009) (noting this Court's exclusive jurisdiction over veterans bene-

fits cases and its special expertise in veterans benefits law); *Tobler v. Derwinski,* 2 Vet.App. 8, 11–12 (1991) ("Congress has made the United States Court of Veterans Appeals the national 'statutory court of review' of decisions on veterans' benefits by the Secretary and the Department of Veterans Affairs." (citation omitted)); *cf. Underwood,* 487 U.S. at 569, 108 S.Ct. 2541 (exploring aspects of court approval or disapproval that may bear on weight to be given to either, including that "a string a losses can be indicative; and even more so a string of successes").

### C. The Majority's Analysis

#### 1. Scant Analysis Beyond Repeating the Merits Determination

As for factors weighing against substantial justification, the majority states that it applies a totality of the circumstances test but effectively substitutes the Federal Circuit's merits determination, which was that the Secretary's interpretation was contrary to the regulation's language and public policy, for its own analytic responsibility.[7] *Johnson II,* 762 F.3d at 1366. While mindful that the exercise of determining substantial justification has been described as "a judgment call" that is "quintessentially discretionary in nature," *Chiu v. United States,* 948 F.2d 711, 715 and n. 4 (Fed.Cir.1991), the majority makes the one error that will doom to failure any substantial justification analysis: to focus on one factor, such as the merits determination, without considering all the pertinent

---

7. As the Federal Circuit appeared to recognize, its policy observation was dicta. *See Myore v. Nicholson,* 489 F.3d 1207, 1211 (Fed.Cir.2007) ("If the statutory language is clear and unambiguous, the inquiry ends with the plain meaning."); *Cacciola v. Gibson,* 27 Vet.App. 45, 52 (2014) ("If the meaning of the regulation is clear from its language, that is the end of the matter." (citation and internal quotation marks omitted)); *see also Johnson*

*II,* 762 F.3d at 1366 ("We further *note* that, while policy arguments would not, in any case, persuade us to depart from the plain language of the regulation...." (emphasis added)). And although we are bound by the Federal Circuit's plain language interpretation of the regulation, we are not bound by its dicta as to public policy. *See Toro,* 383 F.3d at 1335.

factors surrounding the Government's conduct. *See Patrick,* 668 F.3d at 1332 ("Here, although the Veterans Court acknowledged this 'totality of the circumstances' standard, it improperly focused on only one factor—the fact that the court itself had previously upheld the VA's erroneous interpretation...."); *Essex,* 757 F.2d at 253 (rejecting prevailing party's argument that the Government is per se not substantially justified where it acts in contravention of a regulation because "[t]he reasonableness of the government's litigation position is determined by the totality of the circumstances, and we eschew any single-factor approach"); *Felton,* 7 Vet.App. at 286 ("[W]e have gone to great lengths to make clear that the resolution of EAJA issues depends on many factors."); *Stillwell,* 6 Vet.App. at 302 (identifying the "merits" as one factor out of many for consideration).

Although the majority devotes a few brief paragraphs to the Secretary's arguments on substantial justification during the administrative phase, the running theme even in that brief discussion is that the Secretary's interpretation of § 3.321(b) was eventually determined to be erroneous. *Ante* at 141 ("The Secretary contends that his position at the administrative stage was substantially justified in part because he has consistently and long applied his *erroneous* interpretation of § 3.321(b)(1)." (emphasis added)); *ante* at 141 ("Moreover, the Secretary's argument of a consistent and long-standing interpretation finds little support in the majority decision in *Johnson I,* which was predicated on the majority's [ ] view that the regulation was ambiguous—*a view subsequently rejected by the Federal Circuit....*" (emphasis added)); *ante* at 142 ("Here, the Board never addressed the scope of § 3.321(b) *and instead applied the regulation in a manner wholly contrary to the plain wording of the regulation.*" (emphasis added)).

Not every misinterpretation of a regulation by an agency "stamps its position as unreasonable," *Meinhold,* 123 F.3d at 1278, and "the fact that one court agreed or disagreed with the Government does not establish whether or not its position is substantially justified," *Underwood,* 487 U.S. at 565, 108 S.Ct. 2541. It follows that meaningful analysis of the reasonableness of the Government's position is required here. Unsurprisingly, courts are unanimous on this point. *See, e.g., Gonzales,* 408 F.3d at 620; *Taucher,* 396 F.3d at 1174. The majority's dismissive and superficial analysis fails to provide the meaningful review of the totality of the circumstances that substantial justification requires.

2. *Using the Federal Circuit's Plain Language Analysis as a Trump Card as to Substantial Justification*

The majority's view is, apparently, that a more detailed analysis is not necessary because the Federal Circuit held at the merits stage that the Secretary's reading of the regulation was "contrary to the plain language of that regulation and without policy support," and this poses a "significant hurdle" as to substantial justification. *Ante* at 143 (citing *Patrick,* 668 F.3d at 1331). But it does not follow that, because the Federal Circuit used a "plain language" analysis to arrive at a particular result, the analysis used to arrive at that result is plain, or straightforward, or the only reasonable result that the court could have reached, or that parties who failed to foresee that result were unreasonably wrong. Plain language, otherwise stated as language unadorned by other methods of determining meaning, is a canon of statutory and regulatory construction and not a trump card in the substantial justification analysis. *See Wash. Legal Found. v.*

*U.S. Sentencing Comm'n,* 17 F.3d 1446, 1449–50 (D.C.Cir.1994) (" 'Plain meaning' analysis is merely a tool of construction; it does not perform a talismanic function in statutory interpretation."); *see also Watt v. Alaska,* 451 U.S. 259, 266, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981) ("[T]he plain-meaning rule is 'rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists.' " (quoting *Boston Sand Co. v. United States,* 278 U.S. 41, 48, 49 S.Ct. 52, 73 L.Ed. 170 (1928))). Reasonable minds can and do differ on whether the meaning of a regulation can be divined from its plain meaning, just as they can differ on any other legal question.

This Court and others have held numerous times and without difficulty that, even though the government's interpretation was rejected by a court using the plain language canon, that position was substantially justified because the plain language question was close, or because the law in question was complex, or because the case presented an issue of first impression, or, as in this case, because a combination of those factors was present. *See White,* 412 F.3d at 1316 (Secretary's position was substantially justified even where Board applied a regulation found to be "facially invalid on the basis of contradicting the overarching legislation" because the case was "a case of first impression" where there had been "no prior adverse reaction" to the regulation); *Bates,* 20 Vet.App. at 192 (although Federal Circuit held that Secretary's interpretation of 38 U.S.C. § 511(a) was contrary to statute's "plain language" and had "no basis in the statutory language, legislative history, or case authority," [8] Secretary's position was substantially justified because the issue was "a matter of first impression" and the Federal Circuit's analysis "could not have been

easily divined from existing caselaw"); *Ozer,* 16 Vet.App. at 478 (Secretary's enactment of regulation that "contravened the plain language of the statute and was thus invalid" was substantially justified where the Secretary's conduct represented "a good faith effort to interpret an evolving area of the law," did not conflict with then-existing precedent, and "was not questioned" until proceedings before the Court in *Felton,* when it was invalidated (quoting *Felton,* 7 Vet.App. at 285)); *see also Saysana,* 614 F.3d at 6 (Government was wrong to contend that 8 U.S.C. § 1226(c) "was ambiguous," such that deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), was appropriate; however, Government's position was "substantially justified" because case presented a novel issue on which there was little precedent); *Pottgieser,* 906 F.2d at 1324 (Government's reading of Social Security statute contrary to its plain language was substantially justified because "the Secretary's litigation position had a reasonable basis and the Social Security statutes [are] complex"); *Yoffe,* 775 F.2d at 450 (although Government misread Treasury regulations to allow for the private, rather than public, sale of abandoned merchandise, reviewing court did "not think that the government should be found to have acted without substantial justification because it did not foresee how the court of appeals would interpret the regulations"); *S. Or. Citizens Against Toxic Sprays, Inc. v. Watt,* 556 F.Supp. 155, 157 (D.Ore.1983) (government was substantially justified where contravened regulation was "a convoluted regulation, difficult to interpret" and there was "little case law to guide the Government"), *aff'd sub nom. Southern Oregon Citizens Against Toxic Sprays v. Clark,* 720 F.2d

---

**8.** *Bates v. Nicholson,* 398 F.3d 1355, 1361 (Fed.Cir.2005).

1475, 1481 (9th Cir.1983) (affirming denial of EAJA fees because, although the appeals court found that the regulation was not "difficult to interpret" but was rather "straightforward and means what it says, ... [t]he analysis required by the regulation is exceptional ... [and] the only reported case interpreting the ... regulation before this decision supported the government's position").

Similarly, here, the regulation at issue is complex; the question of whether a plain language analysis would suffice to interpret the regulation was a close one, especially given that 5 out of 11 Judges to explore the issue determined that the regulation was not clear;[9] no court had ever interpreted the regulation in a manner contrary to the way the Secretary interpreted it; and the Secretary's interpretation presented a reasonable attempt to resolve a difficult question. *See, e.g., White,* 412 F.3d at 1316. That the Federal Circuit has now provided an authoritative interpretation of that regulation does not change the fact that, prior to *Johnson II,* the Government could be understood if it found the regulation both "complex" and "exceptional." *See Stillwell,* 6 Vet.App. at 303; *see also Meinhold,* 123 F.3d at 1278; *Brambley,* 17 Vet.App. at 24–25 (noting the "ambiguity of the disability ratings regulations" relating to extraschedular and TDIU considerations and the "need to streamline and clarify" these regulations).

The Federal Circuit's citation to an additional reason—public policy—for dis-

agreeing with the Secretary's interpretation does not rob this Court of the ability to hold that interpretation reasonable when analyzing the Government's position for EAJA purposes, for all of the reasons listed above, nor does it absolve this Court of the responsibility to make an independent determination of reasonableness. *Compare Bates,* 398 F.3d at 1361 (Federal Circuit holds that the Secretary's interpretation had "no basis in the statutory language, legislative history, or case authority"), *with Bates,* 20 Vet.App. at 192 (Secretary's interpretation was substantially justified); *see also Gonzales,* 408 F.3d at 620 (merely stating that the merits court "soundly rejected the government's arguments" does not establish a lack of substantial justification). The majority has simply failed to do that here.

### 3. The Majority's Patrick Dicta

The holding of *Patrick,* as noted above, was that this Court had applied an erroneous legal test, because it "improperly focused on only one factor." 668 F.3d at 1332. The observation cited by the majority, regarding plain language and legislative history of statutes, was not necessary to the determination that the case must be remanded for a totality-of-the-circumstances analysis and thus is not binding on this Court. *See McDaniel v. Sanchez,* 452 U.S. 130, 141, 101 S.Ct. 2224, 68 L.Ed.2d 724 (1981) ("[D]ictum unnecessary to the decision in [a] case ... [is] not controlling in this case[.]").

---

**9.** I was one of three Veterans Court Judges who found the regulation's language clear, joining Judge Davis in dissenting in *Johnson I.* I find nothing inconsistent or remarkable about viewing the regulatory language as clear and unambiguous, as I expressed in *Johnson I,* but viewing the Secretary's adopting and arguing a position that the language was ambiguous, and his interpretation thereof due deference, as reasonable, all things considered, and an issue worthy of the lengthy

briefing and opinion-drafting process that characterized the *Johnson I* decision. *See Saysana,* 614 F.3d at 4 (although Government was wrong about whether statute was ambiguous, "the question of whether § 1226(c) was ambiguous, and therefore whether courts had to defer to a reasonable administrative interpretation of the statute, was one of first impression," and, "as such, it was appropriate for the government to seek specific instruction from the court on this issue").

First, the Federal Circuit did not hold that the government's interpretation lacked substantial justification because it interpreted a statute contrary to its plain meaning and legislative history. Indeed, the Federal Circuit has determined that it cannot make such a holding. *See Bowey,* 218 F.3d at 1378 ("[D]etermining substantial justification requires the application of law to facts. Since such inquiries are specifically excluded from our jurisdictional grant, *see* 38 U.S.C. § 7292(d)(2), we must remand this case to allow the Court of Appeals for Veterans Claims to decide whether the government's position was, in fact, substantially justified at the time it was adopted, based on the record at the time.").

Second, the majority misreads the *Patrick* dicta. The language cited by the majority reads, "Where ... the government interprets a *statute* in a manner that is contrary to its plain language *and unsupported by its legislative history,* it will prove difficult to establish substantial justification." 668 F.3d at 1330–31 (emphasis added). In other words, where the situation is similar to that in *Bates,* involving an agency's misconstruing *Congress's* words and misreading *congressional* history, it will prove "difficult"—though, clearly, not impossible, *see Bates,* 20 Vet.App. at 192—to establish that the agency's misconstruction was reasonable. *See Patrick,* 668 F.3d at 1333 ("[I]t would be hard to imagine how it could be held that one had been substantially justified in defying the will of Congress by interpreting a statute in a manner contrary to its plain language and legislative history." (citations and internal

quotation marks omitted)). The Federal Circuit said nothing in *Patrick,* even in passing, about interpretations that contradict statutes but do not contradict legislative history. And here, there has been no holding that the Government's interpretation of § 3.321(b)(1) was contrary to legislative history because there is no legislative history as to VA regulation § 3.321.[10] And, unlike the Secretary in *Patrick,* the Secretary here was not interpreting a statute; he was interpreting his own regulation. Although the canons of regulatory construction are the same as those of statutory construction, as noted above, an agency is on much more stable ground in asserting that its construction of its own words is "reasonable" than in stating that its construction of Congress's words is reasonable. *See Decker,* 133 S.Ct. at 1337; *Skidmore,* 323 U.S. at 140, 65 S.Ct. 161. A reasonable Secretary might well make a different calculation when faced with his own regulatory language that he believes to be ambiguous than when faced with statutory language that he believes possesses the same ambiguity. *See Felton,* 7 Vet.App. at 284; *see also Saysana,* 614 F.3d at 4. Accordingly, whatever one thinks of the accuracy of the Federal Circuit's prediction in *Patrick,* which is that, when two specific factors are against the Secretary's interpretation, that interpretation will have a significant hurdle to clear before being deemed substantially justified, *ante* at 142–43, neither of those factors is present in this case.

## III. CONCLUSION

For the reasons stated above, I believe that the balance of factors in the totality of

---

**10.** The Federal Circuit in *Johnson II* did not address regulatory history, and I note that the issue of regulatory history is a murky one. *See Johnson I,* 26 Vet.App. at 257 (Kasold, J., dissenting) (noting that the language of the original 1930 VA administrative rule "is unclear—ambiguous—as to whether an extras-chedular disability rating could be predicated on a multiple-disability basis, because the rule simply indicates that such a rating would be based on the reduction in average earning capacity compared to the average worker 'suffering a similar disability' ").

the circumstances analysis weighs in the Secretary's favor on the question of whether the Secretary's position was unreasonable in fact and law and that he should thus pay the appellant's legal fees. The Secretary's reasonable arguments on a novel question about his regulation, which included practical considerations and his longstanding interpretation, and this Court's en banc decision in his favor citing those same arguments, made both the Government's administrative and litigation positions in this case "justified to a degree that could satisfy a reasonable person." *Underwood,* 487 U.S. at 565, 108 S.Ct. 2541. I dissent from the majority's attempt to short-circuit the totality-of-the-circumstances analysis by citation to dicta from the Federal Circuit about what factors might make a substantial justification analysis more or less difficult. Additionally, I dissent from the majority's reliance on the Federal Circuit's merits determination, even though that merits determination did not purport to address substantial justification or the reasonableness of the Government's positions at the time those positions were taken.